**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**CLINTON PACKING CO., INC.,
Respondent.
No. 72–1084.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 19, 1972.

Decided Nov. 14, 1972.

Jonathan Axelrod, Atty., N. L. R. B., Washington, D. C., for petitioner.

Joseph C. Dapore, Lima, Ohio, for respondent.

Before LARAMORE, United States Court of Claims Senior Judge, and BRIGHT and ROSS, Circuit Judges.

PER CURIAM.

The National Labor Relations Board (Board) determined that Clinton Packing (Company) committed unfair labor practices in violation of §§ 8(a)(1), 8(a)(3), and 8(a)(5) of the National Labor Relations Act. (29 U.S.C. §§ 158(a)(1), 158(a)(3), and 158(a)(5).) The Board issued an order requiring the Company to cease and desist from the unfair labor practices found, to reinstate and make whole two discharged employees, and to bargain collectively with the Amalgamated Meatcutters & Butcher Workmen of North America, Local Union No. 576 (Union), upon request. We grant enforcement of the Board's order in part and deny enforcement in part.

Twice prior to the instant case the Board found the Company to be in violation of the Act. In Clinton I, the Board found that Clarence Turner, the Company's vice president and plant manager, had among other things threatened plant closure if the Union won the election, in violation of 8(a)(1), and laid off eight employees in violation of 8(a)(3) and (1). This Court summarily enforced the Board's order in that case. (No. 20341, June 26, 1970.) And in Clinton II, pending before the Board at the time the instant charges were filed, the Board found that the Company had violated 8(a)(5) by unilaterally granting wage increases and laying off employees without first consulting the Union. The Company voluntarily complied with the Board's order in Clinton II.

It is in the light of this history of unfair labor practices that the Board accepted the trial examiner's findings that the Company had again violated the Act. Evidence of prior unfair labor practices is relevant in determining the Company's motivation in its subsequent conduct. J. P. Stevens & Co. v. N. L. R. B., 406 F.2d 1017, 1019 (4th Cir. 1968); Maphis Chapman Corp. v. N. L. R. B., 368 F.2d 298, 303–304 (4th Cir. 1966). This is particularly true here where all the activities complained of in Clinton I, II, and the instant case, occurred within approximately a one-year period.

*Discharges*

During contract negotiations following the Union's certification, Turner complained about what he felt was a union-inspired slowdown. One of the bargaining unit's employees, however, began keeping a daily production record which refuted the allegation of a slowdown. On the morning of Friday, July 10, 1970, which was payday, employees Davis and Quick sent messages to Turner informing him that if they were not feeling better by noon they intended to leave early. Davis complained of an arthritic hip and Quick of a headache. When they went to Turner's office, at about 11:30 a. m., to pick up their checks and ask permission to leave because of not feeling well, Turner accused them of participating in a slowdown and warned them they would be fired if they kept it up. Davis denied any knowledge of a slowdown, and both he and Quick left.

Turner then telephoned Wolff, the Union representative, and told him that he was going to discharge Davis and Quick because of their involvement in a slowdown. Wolff denied the charge and asked Turner to reconsider. He indicat-

ed that he would try to be at the plant at starting time on Monday morning to see if there was any evidence of a slow-down. However, when Davis and Quick reported for work the following Monday, and Wolff wasn't there at the 7:00 a. m. starting time, Turner gave them their checks and said that he couldn't use them anymore. Two months later Davis was rehired and promoted to a supervisory position. Quick, however, was not reinstated.

■■ Turner's erroneous belief that there was a union-inspired slowdown was no defense to his discharge of Davis and Quick. *See* N. L. R. B. v. Burnup and Sims, Inc., 379 U.S. 21, 23, 85 S.Ct. 171, 13 L.Ed.2d 1 (1964). Although there does not appear to be substantial evidence in the record to support the Board's finding that Davis and Quick "were known in the plant as active union protagonists," known union activity or membership is not essential since there is substantial evidence that the discharge was the result of suspected union activity. N. L. R. B. v. Ritchie Manufacturing Co., 354 F.2d 90, 98 (8th Cir. 1965).

### Refusal to Bargain

■ In meeting with the Union representatives on two occasions, Turner stated that he would meet with them any time but that he wouldn't do anything as far as a contract was concerned "until the National Labor Relations Board or St. Louis" (apparently referring to this Court) told him what to do. The Board found that these statements were, in effect, refusals to bargain. We find there to be substantial evidence in the record to support this finding that the Company was in violation of 8(a)(5) and (1).

■ The Board also found the Company to have violated 8(a)(5) and (1) when Davis, after being rehired and after being promoted to supervisor, approached two employees, one of whom was the Union "spokesman," and encouraged them to "try to get them [the Union] out." He said that he couldn't stand to lose the day's pay by testifying at the Board hearing, and that the Union wasn't doing anything about getting them more money anyway. And he suggested that he might be able to do better than the Union in getting them wage increases. The Board found that because Davis was a supervisor, and that because he stood to recover considerable back pay if the Board found him to have been unlawfully discharged (as compared to the loss of one day's pay), he was acting on behalf of the Company in violation of the Act by impliedly promising unilateral wage increases. Davis, the same employee who had earlier been discharged as a member of the bargaining unit, denied that he had talked to any of the Company's management regarding this conversation, and we therefore do not find that the inference drawn by the Board is based upon substantial evidence. We deny enforcement as to this portion of the Board's order.

### Interference with § 7 Rights

■ As a result of Davis' conversation with the employees, they approached Turner about using his telephone to make long distance calls to the Union's attorney and the Board to attempt to have the charges dropped. Turner not only granted use of his telephone, but the Company paid for both calls. The Board found this action to have been in violation of 8(a)(1). The important factor, however, is whether Turner prompted Davis to engage in the conversation with the employees to encourage them to make the calls; and the Board made no such finding. Therefore, upon the evidence presented, we cannot concur that the act of allowing the employees to use the telephone for the purpose of attempting to have the charges dropped can be considered an interference with § 7 rights.

■ There is evidence, however, that Turner twice threatened to close the plant if the Union continued to press for reinstatement of Davis and Quick. The second of these statements was made at a meeting with the Union attended by two of the unit employees. The Board found

these threats to be in violation of 8(a)
(1), and we find there to be substantial
evidence to support that finding.

### Conclusion

The Board's order is therefore en-
forced except for parts 1(d) and 1(e),
which we have found to have not been
based upon substantial evidence.