Jackie MOORE,

v.

William L. WEBSTER; Charles E. Kruse;
J. Edward Slauter; John Does 1–25;
John Does 26–50; and John Does 51–75,
Appellees,

Robert M. Cook, Appellant.

Jackie MOORE, Appellant,

v.

William L. WEBSTER; Charles E. Kruse;
J. Edward Slauter; John Does 1–25;
John Does 26–50; and John Does 51–75,
Appellees.

Nos. 90–1528, 90–1529.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 14, 1990.

Decided May 8, 1991.

Gerard Eftink, Kansas City, Mo., for appellants.

Allen Allred, St. Louis, Mo., for appellees.

Before JOHN R. GIBSON, Circuit Judge, HENLEY, Senior Circuit Judge, and CONMY,* Chief District Judge.

HENLEY, Senior Circuit Judge.

Jackie Moore, through his attorney Robert Cook, brought suit against William Webster, Attorney General for the state of Missouri, Charles Kruse, director of the Missouri Department of Agriculture (MDA), Edward Slauter, acting Missouri State Veterinarian, and several unnamed employees of the Missouri Highway Patrol (MHP), the Missouri Department of Transportation (MDOT), and the Missouri Department of Agriculture (collectively referred to as "appellees"). The suit alleged that appellees violated Moore's constitutional rights under 42 U.S.C. § 1983 when they executed a roadblock outside of Moore's place of business and damaged Moore's expectation of future business profits. The district court granted appellees' motion for summary judgment and imposed Rule 11 sanctions against Cook for bringing an unfounded suit for the purposes of harassment. We affirm the grant of summary judgment and remand the issue of Rule 11 sanctions.

As this is an appeal from the grant of summary judgment, we must view the evidence in the light most favorable to Moore and give Moore the benefit of all reasonable inferences drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir.1987). Moore operates the Joplin Regional Stockyards, Inc. (the "Stockyards") in Joplin, Missouri. In May of 1988 an investigator for the United States Department of Agriculture found business records at the Stockyards which indicated the possibility that Moore had misrepresented the origin of a number of cattle sold through the Stockyards.

The origin of cattle sold at public auction is especially important for purposes of determining the question whether the cattle are infected with brucellosis, a highly contagious bovine disease causing spontaneous abortion and infertility in the afflicted cattle. Cattle coming from areas which have infected herds must undergo a blood test to determine if they are brucellosis-free. Because the testing takes a substantial amount of time, the cattle must be quarantined for the testing period. This means that these cattle generally bring lower prices at auction than cattle which need not be tested.

Missouri is engaged in an active program to rid the state of brucellosis, an achievement which would reap substantial economic benefits for the state's livestock industry. This program is threatened, however, when cattle from states with relatively high incidents of brucellosis are sold in Missouri without disclosure of their origin and, therefore, without proper testing.

The USDA investigator's report was conveyed to Slauter at the MDA. For various reasons, Slauter removed himself from the investigation of the Stockyards. The case was transferred to another investigator in the MDA who informed the Missouri Attorney General's office of the matter. The investigation led to the issuance and execution of a search warrant for records at the Stockyards. Examination of these records revealed further potential violations of state law.

The Missouri legislature has enacted a statutory program designed to enable the MDA to enforce the statutes dealing with agricultural matters. The Director of the MDA is empowered by Mo.Rev.Stat. § 267.230 to authorize certain employees of the MDA to assist in enforcing Mo.Rev.

* The Honorable Patrick A. Conmy, Chief Judge, United States District Court, District of North Dakota, sitting by designation.

Stat. §§ 267.010–.730. The statute further states, in pertinent part,

    3. In connection with such enforcement, such authorized employees may intercept, stop and detain for official inspection or inquiry any vehicle carrying livestock in this state....

    5. All county and municipal law enforcement officials may assist such designated employees upon request and all state enforcement officials shall assist such designated employees upon request to the extent that is consistent with the powers that such law enforcement officials derive from their respective jurisdictions.

Acting pursuant to this statute, Webster and Kruse established a one-day checkpoint outside of the Stockyards. The checking was executed on August 28, 1989. All vehicles carrying livestock to and from the Stockyards were stopped and inspected. Approximately fifty vehicles were stopped, and some detentions lasted up to an hour. The appellees examined brucellosis papers and also conducted vehicle safety inspections which resulted in the issuance of citations. These contemporaneous safety checks involved inspection of vehicle lights, turn indicators, brakes, tires, vehicle tags, insurance papers and other similar items not related to brucellosis papers. Even empty trucks were stopped.

Soon after the checkpoint, Webster served notice of an intent to serve a cease and desist order upon the Stockyards, certain of its employees, and certain of its customers for violations of Mo.Rev.Stat. § 407.095. Subsequent to receiving the notice, Moore and Cook met with several assistant attorneys general. Cook reportedly informed them that he would file a suit against various officials and employees of the State of Missouri unless the suit against Moore was settled without either assessment of civil penalties against or admission of wrongdoing by Moore. The assistant attorneys general refused to refrain from pursuing Moore. The Attorney General later brought a civil suit against Moore and others for violations of various Missouri agricultural statutes. The suit sought injunctive relief and civil penalties. Several of Moore's codefendants entered into consent judgments, but Moore did not. Instead, he filed the action which serves as the foundation of this appeal.

The district court granted the appellees' motion for summary judgment by finding that either absolute or qualified immunity shielded them from liability. The court also imposed Rule 11 sanctions upon Cook. The court found that the suit was not well-founded in law, pointing to Cook's recurrent assertion that appellees' bad faith and malice entitled Moore to relief. The court also found that Cook failed to consider the defense of qualified immunity before bringing the suit. Finally, the court found that this suit was filed for the purpose of gaining leverage in a suit previously filed by Webster against Moore. This conclusion was due in large part to the previously mentioned comments Cook made at the meeting with the assistant attorneys general. Although the court initially stated the suit against Moore was criminal, it later amended its order to reflect the fact that the suit was actually civil.

We first address the propriety of the district court's grant of summary judgment. In doing this we assume, as did the district court, that Moore has made sufficient pleadings to state a cause of action under 42 U.S.C. § 1983. As we find that appellees are entitled to summary judgment based upon the defense of qualified immunity, we do not reach the issue of absolute immunity.

Summary judgment is proper when the pleadings, affidavits and other filings made with the court show there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). In order for there to be a genuine issue, there must be legally sufficient probative evidence to present to a jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202.(1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2511.

This court reviews the legal conclusion that no genuine issue existed for trial de novo. *AgriStor*, 826 F.2d at 734.

Moore vigorously contends that appellees are precluded from qualified immunity protection because common law provided no immunity for similar officials engaged in similar actions. In other words, Moore claims that there cannot be qualified immunity for persons unless immunity existed at common law. In support of this assertion he cites cases which contain language indicating that a qualified immunity defense to a § 1983 action begins with an inquiry as to whether, at common law, defendant would have had immunity. Nevertheless, the Supreme Court, in *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), indicated that it would no longer strictly adhere to this approach. In that opinion, Justice Scalia stated,

> Although it is true that we have observed that our determinations as to the scope of official immunity are made in the light of the "common-law tradition," we have never suggested that the precise contours of official immunity can and should be slavishly derived from the often arcane rules of the common law. That notion is plainly contradicted by *Harlow*, where the court completely reformulated qualified immunity along principles not at all embodied in the common law, replacing the inquiry into subjective malice so frequently required at common law with an objective inquiry into the legal reasonableness of the official action.

*Anderson*, 483 U.S. at 644–45, 107 S.Ct. at 3041–42 (footnote and citations omitted).

In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), Justice Powell announced that the Court was altering its approach to the determination of qualified immunity defenses. Specifically, he stated,

> [W]e conclude today that bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of far-reaching discovery. We therefore hold that government officials performing dis-

cretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Harlow*, 457 U.S. at 817–18, 102 S.Ct. at 2738.

■ Justice Powell's discussion evidenced the Court's concern with subjecting government officials to discovery, stating that the court should first decide whether the law the official was alleged to have broken was clearly established at the time the action occurred. If the law was not clearly established, immunity should be granted because the official was unable to realize that his conduct was unlawful. If the law was clearly established, then immunity generally should not be granted. In either event, discovery should be stayed until this question was resolved. Both *Harlow* and *Anderson* embody the Court's desire that officials not be subjected to discovery when the defense of qualified immunity is valid.

■ As Justice Powell noted, the initial inquiry into qualified immunity as a defense requires a determination of the question whether the official's action violated clearly established statutory or constitutional rights of which a reasonable person would have known. Moore asserts in his brief that there was clearly established law in this case, supporting this assertion by correctly noting that the Supreme Court has held that the very action in question need not have been held unlawful for the law to be clearly established. *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. Moore next states, "It is enough that there is a broad principle, such as the right to be free from oppressive conduct." This statement is incorrect, surprisingly so in that it is refuted in the same paragraph Moore cites to support his immediately preceding assertion. Justice Scalia made it clear that such a broad rule of law does not invalidate a party's qualified immunity defense. *Anderson*, 483 U.S. at 639–40, 107 S.Ct. at 3038–39.

Nevertheless, when deciding whether an official is entitled to qualified immunity, we need only determine whether there was clearly established law which revealed the wrongfulness of appellees' actions. *Coffman v. Trickey*, 884 F.2d 1057, 1062–63 (8th Cir.1989); *Boswell v. Sherburne County*, 849 F.2d 1117, 1120 (8th Cir.1988). Moore claims that there was clearly established law, and he cites four cases in support of this contention. All are distinguishable from the case at hand. *Wilson v. City of North Little Rock*, 801 F.2d 316 (8th Cir.1986), involved a roadblock outside of a roller skating rink allegedly arranged by police officers to harass black patrons. In that case, no state statute set out authority to set up the specific roadblock. There was specific statutory authority for the checkpoint appellees operated.

Moore next cites *Lake Butler Apparel v. Dept. of Agriculture*, 551 F.Supp. 901 (M.D.Fl.1982). In this case the court held unconstitutional a long-standing state agricultural statutory scheme which gave state officials authority to stop all vehicles capable of hauling agricultural products. Each of the plaintiffs was transporting textile, rather than agricultural, goods at the time he was stopped. The court found that the statutes permitted random stops of vehicles with no probable cause to suspect that the vehicles were involved with the transport of agricultural goods.

Generously assuming that Missouri state officials should reasonably be expected to be aware of decisions rendered by a district court in Florida, we find that *Butler* fails to establish that appellees' actions pursuant to the Missouri statutes were wrongful. The other cases Moore cites do not involve statutorily permitted checkpoints and are easily distinguishable so as not to merit further discussion.

We are troubled somewhat by appellees' actions at the checkpoint. The safety checks which were performed along with the examination of brucellosis papers were undoubtedly an inconvenience to Moore's customers and could conceivably be viewed by Moore as an effort to punish him. Notwithstanding our concerns, we find appellees' overall actions were objectively reasonable. The statute under which they enforced the checkpoint had not been clearly established to be violative of Moore's constitutional rights at the time the checkpoint was executed. Given that the statutes authorized the stopping of the livestock trailers, appellees' actions fell within the apparent authorization of the statutes. The execution of the safety checks was insufficient to remove this authorization. Applying the test for qualified immunity as expressed in *Harlow* and further discussed in *Anderson*, we hold that appellees were entitled to qualified immunity and that summary judgment was properly granted.

The second issue on appeal is whether the district court below improperly assessed Rule 11 sanctions against Cook, Moore's trial attorney, for filing the suit. As noted, the court found that the suit was not well-founded in law, and was filed for the purpose of gaining leverage in a suit previously filed by Webster against Moore. The entirety of Cook's argument for reversal on this point was predicated upon our using the de novo standard of review in determining whether Rule 11 has been violated. This was the standard we announced in *Jenkins v. State of Missouri*, 904 F.2d 415 (8th Cir.1990). While this once was the proper standard of review, *Jenkins* has been overruled to the extent it conflicts with the Supreme Court's subsequent decision in *Cooter & Gell v. Hartmarx Corp.*, —— U.S. ——, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). In that opinion, Justice O'Connor announced the Court's decision that "an appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination." *Cooter & Gell*, 110 S.Ct. at 2461. "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *N.A.A.C.P.—Special Contribution Fund v. Atkins*, 908 F.2d 336, 339 (8th Cir.1990) (quoting *Cooter & Gell*, 110 S.Ct. at 2461). Under this standard, our review of the record fails to reveal an abuse of the district court's discretion. Nevertheless, given appellees' safety check actions at the

checkpoint as well as the district court's temporary misunderstanding of the nature of the suit filed by Webster against Moore, we feel that the question of Rule 11 sanctions deserves reconsideration. We therefore remand this issue to the district court for a redetermination of the propriety of sanctions as well as their amount, if sanctions are deemed appropriate.

We therefore affirm the district court's grant of summary judgment and remand for reconsideration the question of Rule 11 sanctions.