Ronny D. SAFFELS;  Carol
S. Morriss;  Appellants;

v.

Kris RICE;  R.B. Industries, Inc.;
Randall Haynes;  Appellees.

No. 94–1789.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 16, 1994.

Decided Dec. 2, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied Feb. 3, 1995.

that they reported violations of the law to the authorities.

## I.

Saffels and Morriss were employees at RBI, a small, family-operated business that manufactures and sells woodworking equipment. The company is run by Rice, its president, and Haynes, the company's director of finance. Saffels was hired in October 1990 as a telemarketer and was promoted to telemarketing manager in April 1991 after rapidly becoming a successful telemarketer. Morriss began work in March 1991, and although initially hired as a telemarketer, was assigned to the order entry desk where she received incoming telephone calls for orders. Morriss progressed satisfactorily in her work, and in June 1991 was promoted to the accounting department.

In July 1991, Saffels and Morriss began a romantic relationship, which the defendants allege resulted in poor work performance on both of their parts. It is fair to say that the commencement of their liaison marked the beginning of their eventual demise at RBI. By late October 1991, Rice was dissatisfied with Saffels' performance as telemarketing manager and demoted him to the position of telemarketer.

On November 7, 1991, Rice and Haynes summoned Saffels for a meeting, which they surreptitiously tape recorded. At the meeting, Rice informed Saffels that he had learned from several employees that Saffels called the Occupational Safety and Health Administration (OSHA) and the Department of Labor's Wage and Hour Division. III Jt.App. at 689. He also told Saffels that he was aware that Morriss announced in the presence of other employees that OSHA had been called.[3] *Id.* at 687. Saffels denied that

Donald Earl Howell of Lee's Summit, MO, argued (Joseph Chiarelli, on the brief), for appellants.

Nancy Merrill Wilson of Prairie Village, KS, argued (Frank B.W. McCollum and E. John Edwards III, on the brief), for appellees.

Before HANSEN, Circuit Judge, HEANEY, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

HEANEY, Senior Circuit Judge.

Ronny D. Saffels and Carol S. Morriss[1] filed suit against defendants Kris Rice, Randall Haynes, and R.B. Industries, Inc., (RBI) for wrongful termination in violation of the Fair Labor Standards Act (FLSA) and Missouri's common law public policy exception to the employment at-will doctrine. The parties filed cross motions for summary judgment and the district court granted each party's motion.[2] The court held that Saffels and Morriss lacked standing to bring a claim for wrongful discharge under either the FLSA or Missouri common law and accordingly dismissed both causes of action. For reversal, the plaintiffs ask us to interpret § 15(a)(3) of the FLSA as conferring standing to sue on employees who are terminated based on their employer's mistaken belief

---

1. For the sake of clarity, we shall refer to Plaintiff Morriss by her married name, Morriss. After this suit was commenced, she was divorced and retained what appears to be her maiden name, Knox.

2. Haynes asserted a counterclaim for defamation against Saffels and Morriss, and against Saffels

for assault. He did not cross appeal his adverse judgment.

3. Several days prior to the meeting, Morriss had received a phone call from Saffels at work. At the conclusion of the call, she turned to the other employees in her department and commented

he reported violations or that Morriss made any such assertion. *Id.* Morriss was then invited to join the meeting. In her presence, Rice repeated his concern about her comment that OSHA and the Wage and Hour Division had been called. *Id.* at 691. Rice said that he had "a real problem," a "real lack of faith when things like that are said," *id.* at 689–90, and further commented he had a "pretty sound basis" for believing that Saffels reported violations. *Id.* at 690. In fact, neither Morriss nor Saffels had reported any violations to OSHA or the Wage and Hour Division. At the conclusion of the meeting, Saffels and Morriss were given notice of their termination from RBI.

Before the district court the defendants argued that Saffels and Morriss lacked standing to sue for wrongful discharge under § 15(a)(3) because neither actually filed a complaint with OSHA or the Wage and Hour Division. Even assuming they had standing to sue, the plaintiffs' poor work record, the defendants argued, justified their termination. The district court granted the defendants' motion for summary judgment on the ground that Saffels and Morriss lacked standing to sue.

## II.

The sole question for our consideration is whether § 15(a)(3) of the FLSA protects employees who are terminated from their employment based on their employer's mistaken belief that they reported violations of the law to the authorities or otherwise engaged in protected activity. Section 15(a)(3) provides that it shall be unlawful for any person

to discharge or in any other manner discriminate against any employee *because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee;*

aloud that "OSHA and Wage and Hour have been called." III Jt.App. at 530–31, 613–14, 622–24. Morriss was referring to the fact that another employee at RBI had reportedly called

29 U.S.C. § 215(a)(3) (emphasis added). Although the language of this section would seem clear enough, courts have repeatedly been asked to interpret what employee conduct is protected under the section. Consistent with its remedial purpose, the section has been liberally construed. For example, § 15(a)(3) has been interpreted to cover employees who, in addition to filing a complaint or instituting a formal proceeding, have been terminated after sending a memorandum to their employer requesting a raise, *Love v. RE/MAX of Am., Inc.,* 738 F.2d 383, 387 (10th Cir.1984); refusing to release back pay claims or return back pay awards to their employers, *Marshall v. Parking Co. of Am.,* 670 F.2d 141, 143 (10th Cir.1982) (per curiam); *Brennan v. Maxey's Yamaha, Inc.,* 513 F.2d 179, 182 (8th Cir.1975); refusing to repudiate, in a "loyalty oath," rights guaranteed to them under the FLSA, *Brock v. Casey Truck Sales, Inc.,* 839 F.2d 872, 879 (2d Cir.1988); and communicating with investigators from the Wage and Hour Division, *Daniel v. Winn–Dixie Atlanta, Inc.,* 611 F.Supp. 57, 63 (N.D.Ga.1985). "Courts have therefore not hesitated to apply the protection of section 15(a)(3) to activities less directly connected to formal proceedings where retaliatory conduct has a similar chilling effect on employees' assertion of rights." *Brock,* 839 F.2d at 879; *see also Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 597, 64 S.Ct. 698, 702, 88 L.Ed. 949 (1944) (because of its remedial and humanitarian purpose, the FLSA "must not be interpreted or applied in a narrow, grudging manner").

The defendants concede that courts, in an effort to further the goals of the FLSA, have extended § 15(a)(3)'s application to employee conduct not expressly covered in the act. They note, however, that in all such cases the courts were acting to protect employees who were discharged after asserting protected rights. Appellant's Br. at 35. In this case they argue neither plaintiff took any action

OSHA and the Wage and Hour Division to complain about the company's failure to pay telemarketers overtime. *Id.* at 616.

that could be construed as protected activity. The district court agreed with the defendants, however it focused its opinion on the potentially adverse effect of extending coverage to employees who do not actually report claimed violations. *Saffels v. Rice, et al.*, No. 92–0679–CV–W–8, slip op. at 6 (W.D.Mo. Mar. 7, 1994). Extending § 15(a)(3)'s application to employees who do not report wrongdoings by their employers, the court reasoned, would circumvent the statute's intended purpose of requiring employees, not the federal government, to serve as the enforcement mechanism for the act. *Id.*

■ While it is true that "Congress did not seek to secure compliance [with the FLSA] through continuing detailed federal supervision," *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292, 80 S.Ct. 332, 335, 4 L.Ed.2d 323 (1960), it is equally true that effective enforcement of the act can only "be expected if employees [feel] free to approach [the proper] officials with their grievances." *Id.* The purpose of § 15(a)(3) is not merely to vindicate the rights of complaining parties, but to foster an environment in which employees are unfettered in their decision to voice grievances without "fear of economic retaliation," *id.*, or reprisal. "It follows [then] that courts interpreting the antiretaliation provision have looked to its animating spirit," *Brock v. Richardson*, 812 F.2d 121, 124 (3rd Cir.1987), in applying it to activity that falls outside the express wording of the statute.

■ In the only case on point, the Third Circuit in *Brock, supra*, held that an employee who was discharged in part because of his employers' mistaken belief that he filed a complaint with the Wage and Hour Division was protected under § 15(a)(3). The employee, George Banyas, was terminated after he told an officer of the Wage and Hour

Division, during an investigation of the company pursuant to another employee's complaint, that he had worked overtime hours for which he had not been paid. *Id.* at 122. During later conversations with officers of the Wage and Hour Division, one of Banyas' employers disclosed that Banyas was fired in part because he "had caused trouble ... before with the government," *id.*, and was believed to have filed a complaint with the Wage and Hour Division. *Id.* at 122–23.

In finding § 15(a)(3) wholly applicable, the Third Circuit relied on courts' broad reading of the section as well as the statute's remedial and humanitarian purpose. *Id.* at 123. The court also found noteworthy that § 8(a)(3) of the National Labor Relations Act (NLRA),[4] which was cut out of the same cloth of social legislation as the FLSA in the 1930s and has been used as an interpretive aid in analyzing provisions of the FLSA, has been applied to employees who did not actually engage in the protected activity.[5] *Id.* at 124; *see N.L.R.B. v. Clinton Packing Co.*, 468 F.2d 953, 955 (8th Cir.1972) (per curiam) (employer's erroneous belief that there was a union-inspired slowdown was no defense to his discharge of employee); *N.L.R.B. v. Ritchie Mfg. Co.*, 354 F.2d 90, 98 (8th Cir.1966) (proof of an unfair labor practice does not require proof of actual union activity or membership once it is shown that suspected union activity was the motivating factor in employee's discharge); *Henning & Cheadle, Inc. v. N.L.R.B.*, 522 F.2d 1050, 1052 (7th Cir.1975) (the NLRA is violated if an employer acts against his employees in the belief that they have engaged in protected activities, whether or not they actually did so).

We join in the Third Circuit's sound interpretation of § 15(a)(3). In addition to the reasons cited by the Third Circuit, we believe that a broad reading of the section would in no way diminish the FLSA's underlying pur-

---

4. Section 8(a)(3) of the NLRA makes it an unfair labor practice for an employer to discriminate in order to discourage membership in any labor organization. 29 U.S.C. § 158(a)(3).

5. Consistent with this line of reasoning, we recently held in *Reich v. Hoy Shoe Co.*, 32 F.3d

361, 368 (8th Cir.1994), that an employer's discriminatory discharge of an employee suspected of having filed a complaint with OSHA was prohibited under the Occupational Safety and Health Act, 29 U.S.C.A. § 651 *et seq.*

pose that employees, not the federal government, serve as the enforcement mechanism for the act. Nothing in our reading of § 15(a)(3) will discourage or prevent employees from coming forward with reports of wrongdoing by their employers. Employees inclined to report violations will not be disinclined to do so simply because the act protects employees who are discharged based on their employer's mistaken belief that they reported violations or otherwise engaged in protected activity.

■ Summary judgment is proper if, upon viewing the facts in the light most favorable to the nonmoving party, and giving him or her the benefit of all reasonable inferences, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Johnson v. Minnesota Historical Society,* 931 F.2d 1239, 1244 (8th Cir.1991). A genuine issue of fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). This court reviews de novo the legal conclusion that no genuine issue existed for trial. *Moore v. Webster,* 932 F.2d 1229, 1232 (8th Cir.1991).

■ Interpreting the taped conversation the defendants had with Saffels and Morriss, as well as other corroborating evidence, a reasonable jury could find that Rice and Haynes believed the plaintiffs were responsible for filing a complaint with OSHA and that their termination was motivated, at least in part, by that belief. Whether the plaintiffs were discharged due to their employers' mistaken belief that they called the authorities or because of their poor work record is properly a jury issue. We therefore express no opinion on the merits of the parties' arguments but simply remand this case for further proceedings.

■ Having found that Saffels and Morriss have standing to sue under § 15(a)(3) of the FLSA, we turn to the issue of whether the plaintiffs have made out a claim under the public policy exception to Missouri's employment at-will doctrine. Although Missouri is an at-will employment state, *Dake v. Tuell,* 687 S.W.2d 191, 192–93 (Mo.1985) (en banc), it still recognizes a public policy exception to the at-will rule. The exception generally has been applied in cases involving employees fired for (1) declining to violate a statute, (2) reporting violations of the law by employers or fellow employees, or (3) asserting a legal right. *Lay v. St. Louis Helicopter Airways, Inc.,* 869 S.W.2d 173, 176 (Mo. App.1993); *Boyle v. Vista Eyewear, Inc.,* 700 S.W.2d 859, 872–76 (Mo.App.1985).

■ The defendants argue that Saffels and Morriss cannot avail themselves of the exception because their actions do not fall under any of the recognized categories. We disagree. An at-will employee may state a claim under Missouri's public policy exception when an employer's act of discharging the employee is violative of a statute, a regulation based on a statute, or a constitutional provision. *Johnson v. McDonnell Douglas Corp.,* 745 S.W.2d 661, 663 (Mo.1988) (en banc); *Luethans v. Washington Univ.,* 838 S.W.2d 117, 120 (Mo.App.1992); *Rothweil v. Wetterau, Inc.,* 820 S.W.2d 557, 559 (Mo.App. 1991). Specifically, "when an employer has a statutory, regulatory, or constitutional duty to refrain from discharging an employee for a specified reason, and the employer breaches that duty, the at-will employee may possess a cause of action for wrongful discharge under the public policy exception to the employment at-will doctrine."[6] *Luethans,* 838 S.W.2d at 120. We therefore find that Saffels and Morriss have a cause of action under Missouri's public policy exception to the employment-at-will doctrine.

For the foregoing reasons, the district court's order granting the defendants' motion

---

**6.** We further note that Missouri's public policy exception, although narrow in scope, *Lay,* 869 S.W.2d at 1756, was fashioned to protect workers in cases involving a clear mandate of public policy. *See Boyle,* 700 S.W.2d at 874. Nothing in the Missouri case law we have reviewed suggests that protecting employees who have been discharged on the mistaken belief they reported violations of the law to the authorities is outside the realm of what "sound public policy would encourage." *Id.* at 875.

for summary judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

HANSEN, Circuit Judge, dissenting.

I respectfully dissent. While I understand the Supreme Court has instructed us not to interpret the FLSA "in a narrow, grudging manner," *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597, 64 S.Ct. 698, 702, 88 L.Ed. 949 (1944), neither do I understand the Supreme Court to have authorized us to amend the statute by effectively adding the words "or because the employer mistakenly believes the employee has done or is about to do any of the above," to it, which is what our court's opinion does. Accordingly, I respectfully dissent.