**Lon W. KEIM, M.D., Appellee,**

v.

**LOUISIANA HISTORICAL ASSOCIATION CONFEDERATE WAR MUSEUM, a Louisiana nonprofit corporation, Appellant.**

No. 94–1647.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 13, 1994.

Decided Feb. 27, 1995.

Rehearing Denied April 5, 1995.

David A. Castello, Omaha, NE, argued (James D. Carriere, on the brief), for appellant.

Terry M. Anderson, Omaha, NE, argued (Gordon R. Hauptman, on the brief), for appellee.

Before FAGG, Circuit Judge, ROSS, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

ROSS, Senior Circuit Judge.

Appellee Lon W. Keim filed suit against appellant Louisiana Historical Association Confederate War Museum (the Museum), alleging, among other things, ownership of a Civil War flag known as the Fifth Company, Washington Artillery Battalion of New Orleans—Louisiana Light Artillery Battle Flag. Keim sought damages against the Museum for loss of reputation and diminution in value of the flag. Equitably he sought declaratory judgment that he is the lawful owner of the flag.[1] The Museum counterclaimed seeking possession of the flag as its lawful owner. The district court granted Keim's motion for summary judgment concluding that, under either Louisiana's acquisitive prescription law or Nebraska's statute of limitations, the Museum's counterclaim for possession of the flag is barred. The district court further entered judgment declaring that Keim is the lawful owner of the flag. We affirm.

## I.

On August 2, 1983, Lon Keim, a resident of Nebraska, purchased a Civil War flag for $25,000 from Joseph Canole, a war artifacts collector. Canole had allegedly purchased the flag from Kenneth Foley in February 1975. In April 1975, after he purchased the flag, Canole received a letter from H. Michael Madaus, a curator of the Milwaukee Public Museum and an expert on Confederate War artifacts, suggesting that the flag was once the property of the Museum and may have been stolen. Madaus stated in his letter to Canole that he had called the curator of the Museum to determine if the Museum was still in possession of the flag and that the curator said she would check the Museum records. Madaus wrote that he would be corresponding further with the Museum and would keep Canole apprised.

Also in April 1975, Madaus wrote to Gladys Eddy, as the curator of the Museum, reconfirming his earlier telephone conversation that in his opinion at one time the flag had been owned by the Museum. Madaus again asked Mrs. Eddy to confirm whether the Museum still "technically owned" the

flag. The letter stated that Canole was in possession of the flag and listed Canole's Virginia address. Mrs. Eddy discussed the letter with her boss, the late Henry Morris, who, from 1973 until 1979, was chairman of the committee that supervised the Museum.

Mrs. Eddy wrote back to Madaus on April 22, 1975, stating that the flag remained at the Museum and thanking Madaus for his interest. However, Mrs. Eddy had not examined the storage vault at the Museum to verify the flag's presence, but instead apparently relied only on inventory records. Once again, Madaus wrote to the Museum on May 23, 1975, again requesting that Mrs. Eddy check the Museum's storage to determine whether the Museum owned the flag that was "currently in Virginia." Mrs. Eddy did not recall responding to this letter.

Meanwhile, Canole, who was at the time in possession of the flag, also called the Museum in late May or early June 1975 and spoke with Mrs. Eddy to discuss the flag and Madaus' letter. Mrs. Eddy told Canole that Colonel Bob Eddy was investigating the flag matter and would get in touch with Canole. At no time did Mrs. Eddy tell Canole that the flag belonged to the Museum, or that it had been stolen from the Museum. Col. Eddy subsequently called Canole and told him that he was investigating the whereabouts of the flag and that he would call Canole back if necessary. During this conversation, Canole made it clear that he presently possessed the flag. After this telephone conversation, Canole did not again hear from Col. Eddy. After conducting his investigation, Col. Eddy gave a typed report to Morris. On June 5, 1975, Col. Eddy wrote to Madaus thanking him for notifying the Museum of the flag matter and assuring him "this matter will be investigated further." Morris apparently reviewed this letter before it was sent. From 1975 until 1983, no one from the Museum contacted Canole again. On August 1, 1983, Keim purchased the flag from Canole.

Upon receiving notice in September 1990 that the Museum claimed ownership of the flag, Keim filed this declaratory action. Since 1975 to the present, Keim maintains

---

1. Prior to this appeal, the claim for damages was   dismissed without prejudice.

that he or Canole, his transferor, has been in continuous, uninterrupted possession of the flag under a claim of ownership and now, by virtue of Louisiana's ownership by prescription statute, he is the lawful owner of the flag. The Museum counterclaimed, asserting a right to possession of the flag. In ruling on Keim's request for declaratory judgment, the district court granted summary judgment in favor of Keim, concluding that Keim was the lawful owner of the battle flag and that the Museum had no right, claim or title to the flag. Specifically, the district court held that the Museum's claim of ownership was barred under either Nebraska or Louisiana law and that under Louisiana law, Keim had acquired ownership of the flag by prescription.

## II.

■ We review the grant or denial of summary judgment de novo. The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue of any material fact and that the party moving for summary judgment is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Saffels v. Rice,* 40 F.3d 1546, 1550 (8th Cir.1994).

The district court declined to engage in a choice of law analysis, concluding instead that under either Louisiana, Virginia or Nebraska law, the statute of limitations had run.[2] Nebraska's statute of limitations provides for a period of four years from the date the cause of action accrues. Neb.Rev.Stat. § 25–207(2). Virginia law allows five years after the cause of action accrues, Va.Code Ann. § 8.01–243, and Louisiana law allows ten years. La.Civ.Code Ann. art. 3499.

■ Here, the undisputed facts show that Madaus and Canole both notified the Museum of the flag's whereabouts in mid–1975 by corresponding and speaking with Mrs. Eddy and Col. Eddy, who in turn conveyed this information to Morris, chairman of the committee that supervised the Museum. Further, the facts show that, at Morris' request,

Col. Eddy investigated the flag's background and submitted a written report of his findings to Morris, which clearly indicated Canole was in possession of the flag in Virginia in 1975. The Museum's attempt to argue that its board of directors had no knowledge of the flag is without consequence in light of the evidence showing that Morris and Mrs. Eddy knew the flag was in Canole's possession.

We conclude that Keim's uncontroverted evidence showed that the Museum knew of the flag's whereabouts in 1975. Accordingly, the cause of action for recovery of the flag accrued, and the applicable statute of limitations started to run, no later than 1975 when the Museum either knew of or should have discovered the basis for its cause of action. Therefore, the Museum's counterclaim seeking possession of the flag, which was filed on November 20, 1991, some sixteen years after the cause of action accrued, is now barred.

## III.

■ In the alternative, the district court concluded that Keim has acquired ownership of the flag by virtue of Louisiana's acquisitive prescription statute. *See* La.Civ.Code Ann. art. 3491. The Museum argues for the first time on appeal, however, that Keim has not properly pled the ten-year acquisition by prescription statute and is now barred from doing so. We have frequently stated that we will not consider arguments raised for the first time on appeal. *See, e.g., Roth v. G.D. Searle & Co.,* 27 F.3d 1303, 1307 (8th Cir. 1994). In any event, under the liberal pleading rules of the Federal Rules of Civil Procedure, the Museum was adequately put on notice of the nature of Keim's claim and the grounds upon which it rested. *See* Fed. R.Civ.P. 8(a).

Louisiana law provides for the acquisition of title to personal property, called movables, in a manner similar to the doctrine of adverse possession. Under Louisiana law:

> One who has possessed a movable as owner for ten years acquires ownership by prescription. Neither title nor good faith is required for this prescription.

La.Civ.Code Ann. art. 3491. The historical notes pertaining to this section provide that "[p]ossession alone suffices" to transfer own-

**2.** The Museum is located in Louisiana; Canole possessed the flag in Virginia, and Keim has present possession in Nebraska.

ership. "This prescription applies to all movables that qualify as private things even if they are lost or stolen." Under Louisiana law, "[o]ne is presumed to intend to possess as owner unless he began to possess in the name of and for another." La.Civ.Code Ann. art. 3427. The ten-year possession period is determined by combining the possession of both transferor and transferee. In other words, "[t]he possession of the transferor is tacked to that of the transferee if there has been no interruption of possession." La.Civ. Code Ann. art. 3442.

The acquisition by prescription statute also began to run in 1975 when the Museum was notified of the flag's whereabouts. Here, the uncontroverted facts show that Keim and Canole, his transferor, have been in uninterrupted possession of the flag for at least sixteen years, well beyond the ten-year requirement of the acquisitive prescription statute.

Nor does the Museum qualify under the doctrine of contra non valentem agere nulla currit prescriptio. ("No prescription runs against a person unable to bring an action.") *Aegis Ins. Co. v. Delta Fire & Cas. Co.*, 99 So.2d 767, 772 (La.Ct.App.1957). Under this doctrine, the prescription period may be tolled where the plaintiff is unaware of his injuries or their cause because of some deception on the part of the defendant. Here, however, the Museum had sufficient notice of the flag's whereabouts and, therefore, its potential cause of action, more than ten years prior to the filing of this action, but instead chose not to pursue its claim. *See Henson v. St. Paul Fire & Marine Ins. Co.*, 354 So.2d 612, 615 (La.Ct.App.1977), *affirmed and remanded*, 363 So.2d 711 (La.1978) (prescription period begins to run when sufficient facts were known to the owner to enable him to commence an action to recover the property); *Aegis*, 99 So.2d at 786 (prescription is suspended from the date the movable is stolen until the plaintiff has sufficient knowledge of the cause of action upon which to act).

Therefore, pursuant to Louisiana law, Keim has acquired ownership of the flag by prescription. La.Civ.Code Ann. art. 3491 (ten-year prescription period); La.Civ.Code Ann. art. 3442 (tacking provision).

* Judge McMillian would grant the suggestion for

### IV.

Based on the foregoing, the judgment of the district court is affirmed.