PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

PETER BALL,
Plaintiff-Appellant,

v.

MEMPHIS BAR-B-Q COMPANY,

No. 99-1261

INCORPORATED,
Defendant-Appellee.

SECRETARY OF LABOR,
Amicus Curiae.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-98-1568-A)

Argued: May 4, 2000

Decided: September 14, 2000

Before WILKINSON, Chief Judge, and
NIEMEYER and MICHAEL, Circuit Judges.

_____

Affirmed by published opinion. Judge Niemeyer wrote the majority
opinion, in which Chief Judge Wilkinson joined. Judge Michael wrote
a dissenting opinion.

_____

COUNSEL

ARGUED: Nils George Peterson, Jr., LAW OFFICES OF NILS G.
PETERSON, Arlington, Virginia, for Appellant. Edward Dean Sieger,

Senior Appellate Attorney, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus Curiae. Douglas Michael Nabhan, WILLIAMS, MULLEN, CLARK & DOBBINS, Richmond, Virginia, for Appellee. **ON BRIEF:** Henry L. Solano, Solicitor of Labor, Allen H. Feldman, Associate Solicitor for Special Appellate and Supreme Court Litigation, Nathaniel I. Spiller, Deputy Associate Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus Curiae.

_____

**OPINION**

NIEMEYER, Circuit Judge:

Peter Ball, an employee of Memphis Bar-B-Q Company, Inc., was discharged from his employment after he told the company's president that, if he were deposed in a yet-to-be-filed lawsuit under the Fair Labor Standards Act that was threatened against the company, he would not testify to a version of events suggested by the president. Ball commenced this action under the Fair Labor Standards Act, alleging that his discharge was retaliatory in that he was "about to testify" in a "proceeding under or related to" that Act, in violation of 29 U.S.C. § 215(a)(3). The district court granted Memphis Bar-B-Q's motion to dismiss for failure to state a claim upon which relief could be granted, finding that the Act's anti-retaliation provision was not sufficiently broad to protect Ball. For the reasons that follow, we affirm.

I

During the relevant period, Peter Ball was employed as a manager of one of Memphis Bar-B-Q's northern Virginia restaurants. While managing the restaurant, Ball learned that one of the waiters employed by Memphis Bar-B-Q, Marc Linton, believed that the company had deprived him of compensation for hours he had worked by "turning back the clock" on the computerized timekeeping system, which tracked his hours. Ball also learned that Linton had retained an attorney and was preparing to file suit against Memphis Bar-B-Q under the Fair Labor Standards Act ("FLSA" or"the Act"), 29 U.S.C.

2

§ 201 et seq. Ball alerted the president of Memphis Bar B-Q, David Sorin, to Linton's allegations and told Sorin that Linton was going to file suit against the company.

On or about June 2, 1997, Sorin contacted Ball and, as alleged in Ball's complaint, "asked him about how he would testify if he were deposed as part of a lawsuit." Sorin then suggested how Ball might testify, but Ball indicated to Sorin that he "could not testify to the version of events as suggested by Sorin." Sorin and Ball then talked about the potential lawsuit, discussing what documents might be produced, who might testify, and what embarrassment to Memphis Bar-B-Q might result. A few days later, on June 7, 1997, Memphis Bar-B-Q terminated Ball's employment. Ball alleges in his complaint that he was discharged because he did not agree to testify as Sorin had suggested.

Ball filed this action, alleging that his discharge was retaliatory in violation of § 15 of the FLSA, 29 U.S.C. § 215. In granting Memphis Bar-B-Q's motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), the district court concluded that because Ball's testimony had not been requested in connection with a then-pending FLSA proceeding, he could not receive the benefit of the testimony clause of the FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3). See Ball v. Memphis Bar-B-Q Co., 34 F. Supp. 2d 342, 345-46 (E.D. Va. 1999). This appeal followed.

II

Ball contends that Memphis Bar-B-Q fired him in retaliation for his anticipated refusal to testify in a threatened lawsuit as his employer wished, in violation of the anti-retaliation provision of the FLSA, 29 U.S.C. § 215(a)(3). That provision makes it unlawful for an employer covered by the FLSA

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding.

Ball argues that the term "proceeding" as used in the testimony clause of this provision includes not only court proceedings but also procedures through which complaints are processed within a company. Under such an interpretation, Ball maintains, a proceeding was instituted in this case when the waiter complained to Ball about the time-keeping practices of Memphis Bar-B-Q and continued when Ball passed the complaints on to the company's president. Ball asserts that a fair reading of his complaint reveals that Memphis Bar-B-Q's president "indicated to Ball that Ball was about to testify in a proceeding for recovery of overtime under [the] FLSA."*

The United States Secretary of Labor, as Amicus Curiae, supports Ball's appeal, arguing that Ball's complaint states a valid claim under the FLSA's anti-retaliation provision. The Secretary contends that the statute's reference to employees who are "about to testify in . . . [a] proceeding" protects those "who intend or expect to testify in an impending or anticipated proceeding." (Emphasis added). Both Ball and the Secretary emphasize that the FLSA's anti-retaliation provision should be interpreted expansively to effectuate its remedial purposes.

Memphis Bar-B-Q contends that the district court correctly dismissed Ball's action because Ball cannot point to a pending proceeding in which he was about to testify. Memphis Bar-B-Q argues that the term proceeding "naturally assumes the filing of a complaint." Because no lawsuit was yet filed when Ball was discharged, Memphis Bar-B-Q maintains, its action in discharging him, even if precipitated by his anticipated testimony in a contemplated lawsuit, is not covered by the FLSA's anti-retaliation provision.

The issue framed by the parties' positions is whether Ball's allega-

_____

*Because Ball did not make a complaint to Memphis Bar-B-Q but only communicated Linton's complaint to the company's president, he correctly does not invoke the complaint clause of 29 U.S.C. § 215(a)(3), relying instead on the testimony clause. We have construed the scope of similar complaint-clause language in another context. See Rayner v. Smirl, 873 F.2d 60 (4th Cir. 1989) (interpreting complaint clause in the Federal Railroad Safety Act, 45 U.S.C. § 441(a) (repealed 1994), to include intra-corporate complaints).

4

tion in his complaint -- that he was terminated because he stated that he would be unable to testify in the manner suggested by Memphis Bar-B-Q's president in a yet-to-be-filed lawsuit-- states a claim under the anti-retaliation provision of the FLSA. Articulated otherwise, the legal question before us is whether Ball was "discharge[d] . . . because [he was] about to testify in any . . . proceeding [instituted under or related to the FLSA]." 29 U.S.C.§ 215(a)(3).

The FLSA was enacted with the purposes of protecting employees and imposing minimum labor standards upon covered employers, including the payment of a specified minimum wage and overtime pay for covered employees. See 29 U.S.C.§§ 202, 206, 207; Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 292 (1960). To secure compliance with the substantive provisions of the FLSA, Congress "chose to rely on information and complaints received from employees seeking to vindicate rights claimed to have been denied." Mitchell, 361 U.S. at 292. The anti-retaliation provision facilitates the enforcement of the FLSA's standards by fostering an environment in which employees' "fear of economic retaliation" will not cause them "quietly to accept substandard conditions." Id. We interpret the provisions of the FLSA bearing in mind the Supreme Court's admonition that the FLSA "must not be interpreted or applied in a narrow, grudging manner." Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 597 (1944).

While we are instructed to read the FLSA to effect its remedial purposes, the statutory language clearly places limits on the range of retaliation proscribed by the Act. It prohibits retaliation for testimony given or about to be given but not for an employee's voicing of a position on working conditions in opposition to an employer. Congress has crafted such broader anti-retaliation provisions elsewhere, such as in Title VII of the Civil Rights Act of 1964, which prohibits employer retaliation because an employee has " opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (emphasis added). But the cause of action for retaliation under the FLSA is much more circumscribed.

The FLSA proscribes retaliation against an employee because he has given testimony in a "proceeding" or because he is "about" to give

5

testimony in a "proceeding." In either case, the existence of a "proceeding" is essential to the statutory circumstance. The "about" language modifies the giving of testimony, not the existence of a "proceeding."

Moreover, the "proceeding" necessary for liability under the FLSA refers to procedures conducted in judicial or administrative tribunals. Ball suggests that a proceeding exists upon the making of an intra-company complaint, but the Act clearly does not sweep so broadly. As used in the Act, "proceeding" is modified by attributes of administrative or court proceedings; it must be "instituted," and it must provide for "testimony." See 29 U.S.C.§ 215(a)(3). The term "instituted" connotes a formality that does not attend an employee's oral complaint to his supervisor. And certainly, even if such an oral complaint somehow were understood to have instituted a proceeding, such a proceeding would not include the giving of testimony. Testimony amounts to statements given under oath or affirmation. See, e.g., Random House Dictionary of the English Language 1961 (2d ed. 1987). By referring to a proceeding that has been "instituted" and in which "testimony" can be given, Congress signaled its intent to proscribe retaliatory employment actions taken after formal proceedings have begun, but not in the context of a complaint made by an employee to a supervisor about a violation of the FLSA.

In light of Congress' clear intent to limit the scope of retaliation prohibited by the FLSA, we are constrained to hold that the FLSA's prohibition against retaliation does not read so broadly as to apply to the circumstances alleged in Ball's complaint. Even though Ball's allegations describe morally unacceptable retaliatory conduct, we would not be faithful to the language of the testimony clause of the FLSA's anti-retaliation provision if we were to expand its applicability to intra-company complaints or to potential testimony in a future-but-not-yet-filed court proceeding.

Ball and the Secretary both argue that the language of the testimony clause of the FLSA's anti-retaliation provision is sufficiently ambiguous that we should defer to the Secretary's broader interpretation of the clause, as evidenced by the Secretary's litigation position in this and earlier cases. The Secretary takes the position in her brief that "about to testify in . . . a proceeding" should be interpreted

6

broadly to protect employees discriminated against because they "intend or expect to testify in an <u>impending or anticipated</u> proceeding." Br. of Amicus Curiae at 10 (emphasis added). But the grammatical structure of the clause does not permit this interpretation. While it is enough that the <u>testimony</u> be impending or anticipated, it is not enough that the <u>proceeding</u> be impending or anticipated; it must be "instituted." We therefore are not persuaded that the interpretation urged by the Secretary is a reasonable interpretation of the language of the FLSA's testimony clause. Moreover, litigation positions taken in briefs, just as agency interpretations of statutes contained in formats such as opinion letters, policy statements, agency manuals, and enforcement guidelines, are "`entitled to respect' . . . only to the extent that those interpretations have the `power to persuade.'" <u>Christensen v. Harris County</u>, 120 S. Ct. 1655, 1662-63 (2000) (quoting <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 140 (1944)).

In finding the alleged conduct to be beyond that prohibited by § 15 of the FLSA, we do not condone such conduct. Far from it. If the allegations were proved to be true, such offensive conduct would provide an example of why Congress found it necessary in other contexts to enact broader anti-retaliation provisions. <u>See</u>, <u>e.g.</u>, 42 U.S.C. § 2000e-3(a). But this moral judgment does not justify a conclusion -- contrary to the plain language of the FLSA -- that Ball's complaint states a cause of action under the Act.

<u>AFFIRMED</u>

MICHAEL, Circuit Judge, dissenting:

I respectfully dissent because the majority's reading of FLSA's testimony clause is unnecessarily cramped. According to Peter Ball's complaint, Memphis Bar-B-Q fired him because the company believed he was about to testify against it in a case soon to be filed by another employee who was cheated out of overtime pay. The majority readily acknowledges that "Ball's allegations describe morally unacceptable retaliatory conduct," <u>ante</u> at 6, but the majority believes this conduct is beyond the scope of the Act because no "proceeding" had been "instituted" when Ball was fired. This reading of section 15(a)(3) of FLSA is too narrow, and it frustrates congressional purpose.

7

Ball's complaint (when taken as true) describes an indisputable case of retaliatory discharge. From October 1996 through June 7, 1997, Ball was the manager at a Memphis Bar-B-Q restaurant in Virginia. Ball learned that a waiter was mad at the company because it had cheated him out of wages and overtime by "turning back the clock . . . in the computerized timekeeping system." Ball also learned that the waiter had retained a lawyer and "was preparing to bring suit" against Memphis for violation of FLSA. Ball reported what he had learned to Memphis's president, and on June 2, 1997, the president contacted Ball to discuss the impending lawsuit. The president first asked Ball how he would testify in a deposition; the president then suggested how Ball "could testify as part of a lawsuit." Ball responded, saying that he "could not testify to the version of events as suggested" by the president. Ball was fired five days later, and he asserts he was fired for saying that he would testify truthfully in the waiter's anticipated lawsuit.

The question is whether these facts establish that Ball was "discharge[d] . . . because [he was] about to testify in . . . [a] proceeding [instituted under FLSA]." 29 U.S.C. § 215(a)(3). The more specific question is whether Ball's claim fails because the waiter had not filed his lawsuit (he was <u>preparing</u> to file it) when Ball was fired. The answer depends on whether section 15(a)(3) is read narrowly or broadly. The majority reads it very narrowly, holding that "it is not enough that the <u>proceeding</u> be impending or anticipated; it must be `instituted.'" <u>Ante</u> at 7 (emphasis in original). This interpretation is wrong because the words "proceeding [instituted under FLSA]" must be read in the context of the entire testimony clause. Moreover, the testimony clause must be broadly construed because FLSA is a remedial statute. As a result, the words in question-- "proceeding [instituted under FLSA]" -- simply describe the type of case that triggers the protection of FLSA's testimony clause; they do not require that a lawsuit actually be filed before retaliation for expected testimony is outlawed. Thus, if an employee with a FLSA claim is preparing to file a lawsuit, and the employer fires a second employee because he will testify against the employer, it is reasonable to say that the second employee was "discharge[d] . . . because [he was] about to testify in . . . [a] proceeding [instituted under FLSA]." 29 U.S.C. § 215(a)(3).

The central purpose of FLSA is to achieve certain minimum labor standards for covered employees. <u>See</u> 29 U.S.C. § 202; <u>Mitchell v.</u>

8

Robert De Mario Jewelry, Inc., 361 U.S. 288, 292 (1960). The Act, for example, provides for the payment of a specified minimum wage, provides for increased pay for overtime, and outlaws oppressive child labor. See 29 U.S.C. §§ 206, 207, 212. The Supreme Court has declared these provisions, along with the rest of FLSA, to be "remedial and humanitarian in purpose." Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 597 (1944). Employees themselves are the backbone of FLSA's enforcement scheme. Thus, "Congress did not seek to secure compliance with[FLSA] standards through continuing detailed federal supervision," DeMarco, 361 U.S. at 292; instead, "it chose to rely on information and complaints received from employees seeking to vindicate rights claimed to have been denied," id. Congress recognized that "effective enforcement could . . . only be expected if employees felt free" to register complaints and provide information and testimony. Id. To foster an environment in which employees are willing to speak out about violations, Congress inserted the anti-retaliation provision, section 15(a), that we interpret today. Because employees who are willing to report, or provide information about, violations must be protected and because FLSA is a remedial statute, FLSA "must not be interpreted or applied in a narrow, grudging manner." Tennessee Coal, Iron & R.R. Co., 321 U.S. at 597 (emphasis added). Because the Supreme Court has recognized that broad coverage is essential to employee protection, the Court has instructed us to construe FLSA "`liberally to apply to the furthest reaches consistent with congressional direction.'" Tony & Susan Alamo Found. v. Secretary of Labor, 471 U.S. 290, 296 (1985) (quoting Mitchell v. Lublin, McGaughy & Assocs., 358 U.S. 207, 211 (1959)). Our court has followed that instruction, see, e.g., Roy v. County of Lexington, 141 F.3d 533, 540 (4th Cir. 1998), at least until today.

Two FLSA cases applying the canon of broad construction of remedial statutes, Saffels v. Rice, 40 F.3d 1546 (8th Cir. 1994), and Brock v. Richardson, 812 F.2d 121 (3d Cir. 1987), are instructive because they have facts somewhat similar to this case. In Saffels and Brock the employees were fired because the employer believed that the employees had reported FLSA violations to the authorities. As it turned out, the employer was mistaken, and the question was whether the employees had a claim under section 15(a)(3), which also makes it unlawful for an employer "to discharge . . . any employee because

9

such employee has filed any complaint." 29 U.S.C.§ 215(a)(3). In Saffels the Eighth Circuit noted that a "broad reading" of section 15(a)(3) was required and held that the employees had a retaliatory discharge claim, even though they had not made (or filed) a complaint. Saffels v. Rice, 40 F.3d at 1549. Earlier, the Third Circuit in Brock gave section 15(a)(3) the same broad interpretation, observing that "the discharge of an employee in the mistaken belief that the employee had engaged in protected activity creates the same atmosphere of intimidation as does the discharge of an employee who did in fact complain of FLSA violations." Brock v. Richardson, 812 F.2d at 125. The Third Circuit went on to hold that "a finding that an employer retaliated against an employee because the employer believed the employee complained or engaged in other activity specified in section 15(a)(3) is sufficient to bring the employer's conduct within that section." Id. In the case before us, Ball alleges that Memphis fired him because it believed he was about to testify in a FLSA lawsuit that another employee was preparing to file. This allegation states a claim under section 15(a)(3)'s testimony clause, even though the lawsuit was simply anticipated but not filed.

The majority's decision is a hard blow to FLSA's central purpose of achieving fair labor standards. The decision undermines FLSA's enforcement scheme by stripping protection from many employees who witness unfair labor practices. As of today, the testimony clause does not protect a potential witness from retaliation until a lawsuit has been filed. Employers thus have free rein to retaliate against employees who would testify against them, so long as they retaliate before any lawsuit is filed. This will surely serve to dry up sources of information, a result that is directly contrary to Congress's obvious intent. Moreover, today's decision has negative consequences for our entire system of dispute resolution. Many FLSA claims involve relatively small amounts of money and should be settled informally (and promptly) without litigation. Today's decision will force lawyers to consider filing suit immediately in order to protect potential witnesses from retaliation. Congress was not aiming for these results when it passed FLSA in 1938.

I recognize that the principle of broad construction of remedial statutes does not allow a judge to go beyond reasonable bounds or to ignore the evident meaning of a statute. See Norman J. Singer, Suther-

10

land Statutory Construction § 60.01 (5th ed. 1992). My interpretation fits within this framework, particularly in light of the Supreme Court's instruction that FLSA is to be construed "`liberally to apply to the furthest reaches consistent with congressional direction.'" Tony & Susan Alamo Found., 471 U.S. at 296 (quoting Mitchell, 358 U.S. at 211). As a result, it is reasonable to say that when Memphis fired Ball because he was about to testify in a FLSA suit a company employee was preparing to file, Ball was fired "because [he was] about to testify in . . . [a] proceeding[instituted under FLSA]." 29 U.S.C. § 215(a)(3). The majority's contrary reading strips the testimony clause of much of its force.

I would reverse the district court and allow Ball to proceed with his case.

11