**NATIONAL LABOR RELATIONS
BOARD, Petitioners,**

v.

**CORNERSTONE BUILDERS, INC., and
its alter ego Miracle Construction Services Limited, doing business as M.C.S.
Ltd., Respondents.**

No. 91–2325.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 11, 1992.

Decided May 6, 1992.

Michael Gan, N.L.R.B., Washington, D.C., argued, for petitioners.

Eric J. Snyder, St. Louis, Mo., argued, for respondents.

Before McMILLIAN, LOKEN and HANSEN, Circuit Judges.

McMILLIAN, Circuit Judge.

The National Labor Relations Board (NLRB) has petitioned this court, under § 10(e) of the National Labor Relations Act (the Act), 29 U.S.C. § 160(e), for enforcement of its order against Cornerstone Builders and its alter ego, Miracle Construction Services, Ltd. (referred to herein collectively as respondents), for unfair labor practices.[1] Respondents argue that the NLRB's order should not be enforced because the actions upon which the order is based do not constitute unfair labor practices. For the reasons set forth below, we grant enforcement of the order.

The unfair labor practices arose during the switch in respondents' corporate identity from Cornerstone Builders, Inc. to Miracle Construction Services, Ltd. The switch occurred in 1990 when Cornerstone Builders Inc. went out of business on February 28 and Miracle Construction Services Ltd. began doing business a day later in its place.

At the time of the switch respondents were operating under a labor contract with the International Brotherhood of Painters and Allied Trades, AFL–CIO (the Union). The contract was entered into in 1988 and was effective until 1991. When the switch was made respondents withdrew recognition of the Union as representative of its employees and repudiated the labor contract. The Union then brought charges against respondents under the Act, alleging that these actions by respondents constituted unfair labor practices.

The Administrative Law Judge (ALJ) found respondents to have violated sections 8(a)(1) and (5) of the Act, 29 U.S.C. §§ 158(a)(1), (5). On appeal the NLRB affirmed the ALJ's decision and issued an order against respondents. The NLRB now asks this court to enforce its order.

Standard of Review

The NLRB's findings of fact will be accepted as long as they are supported

---

1. *Cornerstone Builders, Inc.,* 302 N.L.R.B. No. 99 (Apr. 15, 1991).

by substantial evidence on the record as a whole. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 491, 71 S.Ct. 456, 466, 95 L.Ed. 456 (1951). Conclusions of law made by the NLRB will be given deference if they are based upon a reasonably defensible construction of the Act. *NLRB v. Local Union No. 103, International Ass'n of Bridge, Structural & Ornamental Iron Workers*, 434 U.S. 335, 98 S.Ct. 651, 54 L.Ed.2d 586 (1978).

Scope of Review

■ The reviewable issues in this case are limited by the actions taken in the earlier proceedings. Section 10(e) of the Act, 29 U.S.C. § 160(e), provides that "[n]o objection that has not been urged before the Board ... shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." In interpreting this statute the Supreme Court has ruled that, absent extraordinary circumstances, findings made by an ALJ which are not objected to before the NLRB are beyond the powers of review of this court. *Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 665–66, 102 S.Ct. 2071, 2083, 72 L.Ed.2d 398 (1982). No extraordinary circumstances are apparent from the record and none are urged here by respondents. Accordingly, the following findings of the ALJ, affirmed by the NLRB without objection by the respondents, are accepted as true for purposes of this adjudication: (1) Cornerstone and Miracle (respondents) are alter-egos, (2) the labor contract referred to herein was valid, and (3) that the Union enjoyed majority status under Section 9(a) of the Act when it was recognized by respondents.

Discussion

■ Notwithstanding these undisputed findings, respondents argue that, under the circumstances present, they were free to withdraw recognition of the Union and re-

pudiate the labor contract. *See Stoner Rubber Co.*, 123 N.L.R.B. 1440, 1446 (1959); *General Extrusion Co.*, 121 N.L.R.B. 1165, 1167 (1958); *Appalachian Shale Products Co.*, 121 N.L.R.B. 1160, 1162 (1958). According to respondents, the circumstances which justified its actions were: (1) the labor contract, though valid, had not been signed by the Union, (2) there had been a substantial reduction in its work force from twelve employees down to three, and (3) the remaining employees had indicated a desire to no longer be represented by the Union. Even assuming these circumstances to be true,[2] respondents' argument fails for the reasons set forth below.

■ As a general rule, the existence of a valid labor contract bars any attempt to change or withdraw Union representation during the term of the contract. *Hexton Furniture Co.*, 111 N.L.R.B. 342 (1955); *Sanson Hosiery Mills, Inc.*, 92 N.L.R.B. 1102, 1103 (1950), enf'd, 195 F.2d 350 (5th Cir.), cert. denied, 344 U.S. 863, 73 S.Ct. 103, 97 L.Ed. 669 (1952). However, respondents correctly point out that the NLRB has recognized exceptions to this general rule under circumstances similar to those present in this case. Thus the NLRB has created a general exception that any unsigned contract will not bar an election to withdraw recognition of a particular Union as a representative of employees. *Crothall Hospital Services, Inc.*, 270 N.L.R.B. 1420 (1984); *Appalachian Shale Products Co.*, 121 N.L.R.B. 1160 (1958). Also, a substantial change in the work force has been recognized as a circumstance which may warrant allowance of an election during the term of a valid contract. *General Extrusion Co.*, 121 N.L.R.B. 1165 (1958).

Even assuming that one of the exceptions to the contract bar rule applies in this case,[3] the unilateral actions taken by respondents are not justified. The excep-

---

**2.** The ALJ found it unnecessary to determine whether the Union had actually signed the labor contract. *See Cornerstone Builders, Inc.*, Nos. 14–CA–20825 and 14–CA–20825–2 (Dec. 10, 1990).

**3.** Applicability of either of these exceptions to this case is questionable. Regarding the unsigned contract exception, it is important to note that this exception was created by the NLRB to reduce complexity in administrative

tions justify the institution of election proceedings during a contract term to change or withdraw union recognition. They do not justify unilateral withdrawal.

Unilateral withdrawal of union recognition is of a completely different character than an election proceeding. Election proceedings provide an objective basis for withdrawal of union recognition. In contrast, unilateral withdrawal is based on the subjective belief of an inherently biased party. Second, election proceedings validate withdrawal as it occurs. Unilateral withdrawal, on the other hand, can only be validated after the fact in a subsequent election proceeding or court proceeding (such as the present case). Until validation, the effectiveness of unilateral derecognition is uncertain. Finally, election proceedings provide general notice to all interested parties that a change in union recognition has occurred. Unilateral withdrawal provides no such general notice.

These differences show that unilateral withdrawal of union recognition is generally a poor substitute for an election proceeding. In fact, respondents have cited only one instance where unilateral withdrawal of union recognition has been upheld. *Stoner Rubber Co.*, 123 N.L.R.B. 1440 (1959) (*Stoner*). No labor contract existed between the employer and union in *Stoner.* Where no labor contract exists, *Stoner* suggests that circumstances may justify an employer's assumption that a union no longer represents its employees. *Id.* at 1446.

■ However, where a valid labor contract exists, an employer cannot assume that union representation is no longer valid and unilaterally withdraw recognition. The contract creates a presumption of valid un-

ion representation. To assume otherwise and unilaterally act on that assumption is equivalent to ignoring the presumption. While this presumption may be affirmatively rebutted via an election proceeding, it cannot be ignored. Therefore, respondents' unilateral withdrawal of union recognition cannot be justified due to the admitted existence of a valid labor contract.

For the aforementioned reasons we hold the NLRB's findings that respondents' acts were not justified and constituted unfair labor practices are supported by substantial evidence on the record as a whole. Accordingly, the order of the NLRB is enforced. The NLRB's request for sanctions pursuant to Fed.R.App.P. 38 has been considered and is denied.

---

proceedings involving a contract bar issue. *Appalachian Shale Products Co.*, 121 N.L.R.B. 1160, 1162 (1958). In arguing for application of this *exception to reverse* the NLRB's decision, respondents face the daunting task of convincing this court that the NLRB misapplied its own rule created for its own benefit.

It is also unclear whether the change in the work force exception created by *General Extrusion* applies. *General Extrusion Co.*, 121 N.L.R.B. 1165 (1958). First, the exception refers only to cases where there has been a substantial increase in the work force. *Id.* at 1167.

Whether the exception should also apply to a substantial decrease in the work force, as we have here, is undecided. Also, the NLRB's decision suggests that the exception should apply only when less than 30% of the workers employed at the time withdrawal of recognition was sought had been employed at the time the contract was executed. *Id.* at 1167. In the present case, one of the three workers employed at the time respondents withdrew recognition, or 33%, had been employed when the labor contract had been executed.