# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3515
No. 02-3688

_____

| | | |
|---|---|---|
| JCR Hotel, Inc., | * | |
| | * | |
| Petitioner/Cross - Respondent, | * | |
| | * | Petitions To Set Aside or |
| v. | * | Enforce an Order of the |
| | * | National Labor Relations Board. |
| National Labor Relations Board, | * | |
| | * | |
| Respondent/Cross - Petitioner. | * | |

_____

Submitted:   April 14, 2003

Filed:   September 5, 2003

_____

Before LOKEN, Chief Judge, HANSEN and BYE, Circuit Judges.

_____

LOKEN, Chief Judge.

Affirming an administrative law judge, the National Labor Relations Board ruled that JCR Hotel, Inc. (JCR) violated § 8(a)(1) of the National Labor Relations Act when it discharged housekeeping inspector Patsy Wilson for encouraging or organizing an employee walkout. JCR Hotel, Inc., 338 N.L.R.B. 27 (2002). JCR petitions to set aside the Board's order, raising issues that turn, in our view, on the question whether an employer's *erroneous* belief that an employee is engaged in protected concerted activity can be the basis of a § 8(a)(1) violation. Concluding that

the Board's consistent resolution of this issue is a permissible interpretation of the statute, we grant the Board's cross-petition and enforce its order.

## I.

JCR hired Wilson in October 1997 as a catering manager at the Ramada Inn in Jefferson City, Missouri. Other employees soon complained about Wilson's abrasive manner to the hotel's general manager, Theresa Riley. In response, Riley transferred Wilson first to the position of night desk manager and then to the position of housekeeping inspector. After both transfers, co-workers continued to complain about Wilson's behavior. Riley and housekeeping supervisor Teresa Atkisson told Wilson to improve her relationships with other employees.

On October 26, 1999, JCR told several housekeepers that the free meal customarily provided would not be available that day. While on break, several employees, including Wilson, complained to each other about the situation. Housekeeper James Whittler said that JCR would only pay attention to complaints if they all walked out or sat down on the job. Wilson commented that a walkout should occur "on a full house day," such as when the Elks organization booked the entire inn for a meeting. Two days later, supervisor Atkisson overheard employees discussing Wilson's plan for a walkout. Atkisson met with general manager Riley and told her "that rumor had it that Patsy was trying to get some of the people to walk out on a full house day." After obtaining the approval of JCR's owners, Riley discharged Wilson when she came to work on November 2. Riley initially told Wilson she was being fired because she could not work with people. Pressed by Wilson, Riley added, "[w]ord is you are planning a walk out with the housekeeping department."

The Board's General Counsel issued a complaint charging that JCR violated § 8(a)(1) by discharging Wilson because of her protected concerted activity and by interrogating her about such activity. During the General Counsel's case-in-chief,

Wilson related the reasons Riley gave for the discharge. Wilson further explained that her comment in the break room about walking out when the hotel was full was merely a flippant remark, and she never intended to organize a walkout. At the close of the case-in-chief, the ALJ dismissed the interrogation charge but denied JCR a directed verdict on the protected concerted activity charge. Atkisson and Riley then testified during JCR's case. Atkisson admitted she overheard other employees say Wilson was organizing a walkout and reported that to Riley. Riley admitted she told Wilson, "word is you are planning a walk out," but only after Wilson "pushed [her] hot button." Riley insisted that Wilson's inability to get along with other employees was the reason for her termination. Other defense witnesses confirmed that Wilson had been an abrasive or unpopular co-worker.

The ALJ found that Wilson's walkout remark to other employees was protected concerted activity, that Riley believed Wilson engaged in protected concerted activity in making that remark, that Wilson was discharged at least in part for this protected concerted activity, and that JCR had failed to prove Wilson would otherwise have been discharged. The Board agreed and ordered JCR to cease and desist the unlawful conduct and reinstate Wilson with back pay.

## II.

It is an unfair labor practice for an employer to "interfere with, restrain, or coerce" employees in the exercise of their right to engage in protected concerted activities. See 29 U.S.C. §§ 157, 158(a)(1). An employer violates § 8(a)(1) by discharging a non-union employee for organizing or implementing a collective walkout to protest working conditions. See NLRB v. Wash. Aluminum Co., 370 U.S. 9, 14-15 (1962). To be considered *concerted* activity, "It is sufficient that the employee intends or contemplates, as an end result, group activity which will also benefit some other employees." Koch Supplies, Inc. v. NLRB, 646 F.2d 1257, 1259

(8th Cir. 1981). "[T]alk looking toward group action" is protected; mere griping is not. Mushroom Transp. Co. v. NLRB, 330 F.2d 683, 685 (3d Cir. 1964).

A. The Board concluded that JCR violated § 8(a)(1) because Atkisson and Riley took Wilson's remark seriously and discharged her, in Riley's words, for "planning a walk out with the housekeeping department." JCR argues that this interpretation of the statute is unreasonable because it does away with the limitation that Section 7 only protects concerted employee activity. We disagree.

Though JCR attacks the Board's decision as based only on dicta in the one case cited by the ALJ, Daniel Construction Co., 277 N.L.R.B. 795 (1985), many prior Board decisions have approved the principle on which the ALJ and the Board relied:

> [A]ctions taken by an employer against an employee based on the employer's belief the employee engaged in or intended to engage in protected concerted activity are unlawful even though the employee did not in fact engage in or intend to engage in such activity.

Monarch Water Sys., Inc. 271 N.L.R.B. 558, 558 n.3 (1984), quoted in United States Serv. Indus., Inc., 314 N.L.R.B. 30, 31 (1994); accord Henning & Cheadle, Inc., 212 N.L.R.B. 776, 778 (1974), enforcement denied on other grounds, 522 F.2d 1050 (7th Cir. 1975); San Juan Lumber Co., 144 N.L.R.B. 108, 108 n.1 (1963). Thus, the Board in this case followed its consistent, long-standing interpretation of § 8(a)(1). Moreover, a number of reviewing courts have approved, in various contexts, the principle that an employer commits an unfair labor practice when it acts on a mistaken belief that an employee has engaged in protected concerted activity. See NLRB v. Link-Belt Co., 311 U.S. 584, 589-90, 598 (1941); Holyoke Visiting Nurses Ass'n v. NLRB, 11 F.3d 302, 307 (1st Cir. 1993); NLRB v. Clinton Packing Co., 468 F.2d 953, 954-55 (8th Cir. 1972).

In construing the National Labor Relations Act, we defer to the Board's conclusions of law if they are based upon a reasonably defensible construction of the Act. See NLRB v. Cornerstone Builders, Inc., 963 F.2d 1075, 1077 (8th Cir. 1992). Here, the Board reasonably construed § 8(a)(1) as prohibiting an employer from discharging an employee for conduct the employer believes to be protected concerted activity. The broad purpose of the statute is to protect "the right of employees to organize for mutual aid without employer interference." Republic Aviation Corp. v. NLRB, 324 U.S. 793, 798 (1945). When an employer fires an employee for engaging in protected concerted activity, other employees are discouraged from engaging in such activity in the future, even if the employer misjudged what the fired employee had done. Viewed in this light, the Board reasonably concluded that JCR violated § 8(a)(1) if it fired Wilson because, from JCR's perspective, she had attempted to organize a walkout. See Kenrich Petrochems., Inc. v. NLRB, 907 F.2d 400, 407 (3d Cir.), cert. denied, 498 U.S. 981 (1990).

B. JCR also argues that the ALJ erred in denying its motion for directed verdict because the General Counsel failed to call Atkisson and Riley during his case-in-chief and therefore failed to prove that Wilson was discharged for engaging in protected concerted activity. However, Wilson testified during the General Counsel's case-in-chief that Riley noted Wilson was "planning a walkout" when pressed to explain why she was being terminated. If this testimony was found credible and went unrebutted by JCR, it would support a finding that Wilson was terminated, at least in part, for this reason. As that would establish a violation of § 8(a)(1), the ALJ did not err in denying JCR's motion for a directed verdict on this charge.

C. Alternatively, JCR challenges the Board's ultimate finding that Wilson was discharged for engaging in protected concerted activity. To establish this type of violation, the General Counsel has the burden to prove that the fired employee's protected concerted activity was a motivating factor in the decision to discharge. If the General Counsel meets that burden, the burden shifts to the employer to prove it

would have taken the same action absent the employee's protected activity. See St. Luke's Episcopal-Presbyterian Hosps., Inc. v. NLRB, 268 F.3d 575, 581 (8th Cir. 2001); Holo-Krome Co. v. NLRB, 954 F.2d 108, 111-14 (2d Cir. 1992). Because these are fact-intensive issues, we must enforce the Board's order if it is supported by substantial evidence on the record as a whole. See 29 U.S.C. § 160(e); NLRB v. MDI Commercial Servs., 175 F.3d 621, 625 (8th Cir. 1999).

JCR first argues that the General Counsel failed to carry his burden of proving protected concerted activity. However, the premise for this contention is flawed. As we have explained, the critical issue is whether JCR fired Wilson because it *believed* she had engaged in protected concerted activity. Thus, it is irrelevant whether the evidence established that her conduct was not *in fact* concerted activity because Wilson admitted her walkout remark was flippant and she never intended to instigate concerted employee action.

JCR next argues that, if the General Counsel proved an unlawful motive, JCR then met its burden of proving that the discharge was for cause -- Wilson's inability to get along with her co-workers. Again, JCR misstates the legal issue. In a mixed motive situation, the issue is not whether the employer had good cause to fire. The issue is whether the employer would have made the same decision absent the employee's protected activity. Here, there was ample evidence Wilson was an abrasive co-worker. But JCR tolerated that deficiency for a long time, twice transferring Wilson to a new position in an attempt to improve her performance. Then, when Wilson engaged in conduct JCR perceived as "planning a walk out," she was fired in a matter of days, and Riley referred to that conduct in explaining the termination to Wilson. JCR argues it should not be punished for giving Wilson many chances to improve. But the question remains, would Wilson have been terminated had she not been perceived as stimulating or organizing protected concerted activity? That is an issue of fact, and on this record, substantial evidence supports the ALJ's finding "that in light of the statements made by Riley to Wilson as to the reason

Wilson was being fired, [JCR] has failed to establish that she would have been discharged regardless of her protected concerted activity." Where, as here, the evidence supports two reasonable inferences, "we may not preempt the Board's choice between two fairly conflicting views of that evidence." MDI Commercial Servs., 175 F.3d at 626 (internal quotation omitted).

We grant the Board's cross-application to enforce its order and deny JCR's petition for review.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.