PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 09-3198

———

SHIRLEY EDWARDS,

Appellant

v.

A.H. CORNELL AND SON, INC.,
d/b/a AH Cornells;
MELISSA CLOSTERMAN;
SCOTT A. CORNELL

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-09-cv-01184)
District Judge:  Honorable J. Curtis Joyner

———

Argued April 13, 2010
Before:  FISHER, HARDIMAN and
COWEN, *Circuit Judges*.

(Filed:  June 24, 2010)

Ari R. Karpf
Justin L. Swidler (Argued)
Karpf, Karpf & Virant
3070 Bristol Pike
Building 2, Suite 231
Bensalem, PA  19020
        *Counsel for Appellant*

Christie M. Flamm
Walter H. Flamm, Jr. (Argued)
Flamm Walton
794 Penllyn Pike
Blue Bell, PA  19422
        *Counsel for Appellees*

Eric C. Lund (Argued)
Plan Benefits Security Division
Nathaniel I. Spiller
Office of the Solicitor
United States Department of Labor
Room N-4611
200 Constitution Avenue, N.W.
Washington, DC  20210
        *Counsel for Amicus Curiae,*
        *Secretary of Labor*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

Shirley Edwards filed suit against her employer, A.H. Cornell and Son, Inc. ("A.H. Cornell"), and supervisors, Scott A. Cornell and Melissa J. Closterman, claiming that she was terminated in violation of Section 510 of the Employee Retirement Income Security Act of 1974 ("ERISA") and state common law after complaining to management about alleged ERISA violations. The defendants filed a Rule 12(b)(6) motion to dismiss, and the District Court granted the motion, holding that Edwards's complaints were not part of an "inquiry or proceeding" and thus not protected under Section 510. On appeal, we are presented with a single issue of first impression for this Court: whether the anti-retaliation provision of Section 510 of ERISA, 29 U.S.C. § 1140, protects an employee's unsolicited internal complaints to management. Four federal Courts of Appeals have ruled on this issue: the Fifth and Ninth Circuits have held in the affirmative, and the Second and Fourth Circuits have held in the negative. We agree with the latter, and hold that unsolicited internal complaints are not protected.

# I.

## A.[1]

Defendant A.H. Cornell is a family-owned company that provides commercial and residential construction services. In March 2006, A.H. Cornell hired Plaintiff Edwards to serve as its Director of Human Resources and to establish a human resources department. Defendant Cornell, an A.H. Cornell executive, oversaw the terms and conditions of Edwards's employment, and Defendant Closterman, who managed the company's daily operations, acted as Edwards's supervisor. Edwards was employed by A.H. Cornell for a total of nearly three years. As an employee, Edwards participated in the company's group health insurance plan, which was governed by ERISA.

Edwards claims that she discovered, during the last weeks of her employment, that A.H. Cornell was engaged in several ERISA violations: the company was allegedly administering the group health plan on a discriminatory basis, misrepresenting to some employees the cost of group health coverage in an effort to dissuade employees from opting into benefits, and enrolling non-citizens in its ERISA plans by providing false social security numbers and other fraudulent

---

[1]Because Edwards appeals from a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the facts pled by Edwards in her complaint are assumed to be true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

4

information to insurance carriers. Edwards alleges that she "objected to and/or complained to" A.H. Cornell's management about these ERISA violations and was terminated on or around February 11, 2009, as a result. (App. at 26, ¶ 33.) According to Edwards, Closterman was directly responsible for her termination, and Cornell participated.

**B.**

On March 18, 2009, Edwards filed a complaint in the United States District Court for the Eastern District of Pennsylvania against A.H. Cornell, Cornell, and Closterman, asserting an anti-retaliation claim under Section 510 of ERISA and common law wrongful discharge. On May 18, 2009, the defendants filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Edwards had not engaged in a protected activity under Section 510.

The District Court granted the motion to dismiss on July 23, 2009. After examining the circuit split on this issue, the District Court determined that the Second Circuit's analysis in *Nicolaou v. Horizon Media, Inc.*, 402 F.3d 325 (2d Cir. 2005) (per curiam), was persuasive and held that Edwards failed to state a claim upon which relief could be granted because her alleged objections and/or complaints to management were not part of an "inquiry or proceeding":

> "Plaintiff does not allege that anyone requested information from her or initiated contact with her in any way regarding the alleged ERISA violations. Nor does she allege that she was

5

> involved in any type of formal or informal gathering of information. She states merely that she objected to or complained about certain conduct by Defendants."

(App. at 13-14 (citations omitted).) Having dismissed Edwards's ERISA claim, the District Court declined to exercise supplemental jurisdiction over Edwards's state law claim for wrongful discharge.

Edwards timely appealed, and the Secretary of Labor filed a brief as amicus curiae in support of Edwards's position.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291. "We review de novo the District Court's dismissal of an action under Rule 12(b)(6)." *Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.*, 579 F.3d 304, 307 (3d Cir. 2009) (emphasis omitted). Pursuant to *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), district courts must conduct a two-part analysis when presented with a motion to dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "First, the factual and legal elements of a claim should be separated." *Id.* "The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. "Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 129 S. Ct. at 1950).

## III.

The sole issue on appeal is whether the District Court erred in holding that unsolicited internal complaints are not protected activities under the anti-retaliation provision of Section 510 of ERISA, 29 U.S.C. § 1140.[2]  We will affirm.

### A.  Background

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee

---

[2]Edwards also contends, citing a single district court opinion, that she is protected under a separate clause of Section 510, which provides,

> "It shall be unlawful for any person to discharge . . . a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, [or] this subchapter, . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, [or] this subchapter[.]"

29 U.S.C. § 1140.  (*See also* Edwards Br. at 15-16.)  Since Edwards failed to raise this argument in the District Court, it is waived.  *See DIRECTV Inc. v. Seijas*, 508 F.3d 123, 125 n.1 (3d Cir. 2007) ("It is well established that arguments not raised before the District Court are waived on appeal.").

benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). "The statute imposes participation, funding, and vesting requirements on pension plans. It also sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for both pension and welfare plans." *Id.* at 91. As part of this system, "Congress included various safeguards to preclude abuse and 'to completely secure the rights and expectations brought into being by this landmark reform legislation.'" *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990) (quoting S. Rep. No. 93-127, at 36 (1973)). One such safeguard is ERISA's anti-retaliation or "whistleblower" provision, which provides as follows:

> "It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act."

29 U.S.C. § 1140. Put simply, the purpose of the provision is to "proscribe[] interference with rights protected by ERISA." *Ingersoll-Rand Co.*, 498 U.S. at 137.

## B. The Circuit Split

The federal Courts of Appeals are split on whether Section 510 encompasses unsolicited internal complaints. The Fifth and Ninth Circuits have held in the affirmative, *see Anderson v. Elec. Data Sys. Corp.*, 11 F.3d 1311 (5th Cir. 1994), and *Hashimoto v. Bank of Hawaii*, 999 F.2d 408 (9th Cir. 1993),

8

while the Second and Fourth Circuits have held in the negative, *see Nicolaou*, 402 F.3d 325, and *King v. Marriott Int'l Inc.*, 337 F.3d 421 (4th Cir. 2003).

The Ninth and Fifth Circuits were the first circuits to consider the issue. In each case, the plaintiff employee filed a complaint under state law alleging wrongful discharge for complaining to supervisors about alleged ERISA violations.[3] *Hashimoto*, 999 F.2d at 409-10; *Anderson*, 11 F.3d at 1312-13. Finding that Section 510 of ERISA already provided employees with a remedy, the Ninth Circuit held that the employee's state law claim was completely preempted by ERISA and remanded the case to allow the state claim to be re-characterized as a federal cause of action. *Hashimoto*, 999 F.2d at 411-12. The court explained that the failure of Section 510 to protect internal complaints would, in practice, inhibit the effectiveness of the anti-retaliation provision:

> "The normal first step in giving information or testifying in any way that might tempt an employer to discharge one would be to present the problem first to the responsible managers of the ERISA plan. If one is then discharged for raising the problem, the process of giving information or testifying is interrupted at its start: the

---

[3]The employee in *Anderson* also claimed that he was discharged for refusing to commit acts in violation of ERISA. 11 F.3d at 1312-13.

9

anticipatory discharge discourages the whistle blower before the whistle is blown."

*Id.* at 411. Shortly thereafter, the Fifth Circuit arrived at the same conclusion in *Anderson*, holding that a state law claim for wrongful discharge was preempted by ERISA in part "because the cause of action would conflict with the enforcement provisions of §§ 502(a) and 510 of ERISA." 11 F.3d at 1314. The court further explained, in broad terms, "[the employee's] claim falls squarely within the ambit of ERISA § 510[,]" which "addresses discharges for exercising ERISA rights or for the purpose of interfering with the attainment of ERISA rights, as well as discharges for providing information or testimony relating to ERISA." *Id.* (quotations and citations omitted).

Faced with the same issue, the Fourth Circuit has since drawn the opposite conclusion, holding that an employee's state law wrongful discharge claim is not preempted by ERISA because Section 510 does not protect unsolicited internal complaints. *King*, 337 F.3d at 427-28. Focusing on "the proper scope of the phrase 'inquiry or proceeding,'" the court analogized Section 510 to the anti-retaliation provision in the Fair Labor Standards Act (FLSA)[4]:

---

[4]Section 15(a)(3) of the FLSA provides that it is unlawful for any person

"to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be

10

"In the instant case, as well, the use of the phrase 'testified or is about to testify' does suggest that the phrase 'inquir[ies] or proceeding[s]' referenced in section 510 is limited to the legal or administrative, or at least to something more formal than written or oral complaints made to a supervisor. The phrase 'given information' does no more than insure that even the provision of non-testimonial information (such as incriminating documents) in an inquiry or proceeding would be covered. And, here as well [], the anti-retaliation provision in section 510 is much narrower than the equivalent [in Title VII.][5]"

---

instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee[.]"

29 U.S.C. § 215(a)(3). In *Ball v. Memphis Bar-B-Q Co., Inc.*, 228 F.3d 360 (4th Cir. 2000), the Fourth Circuit held that Section 15(a)(3) does not protect internal complaints. *Id.* at 364. This is the minority view. *See* note 8, *infra*.

[5]Section 704(a) of Title VII provides,

"It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any

11

*Id.* at 427 (first and second alterations in original; footnote 5 supplied). The Fourth Circuit found that the Ninth and Fifth Circuit decisions in *Hashimoto* and *Anderson*, respectively, were not persuasive. According to the court, the Ninth Circuit in *Hashimoto* improperly "reject[ed] the most compelling interpretation of the statutory language for a 'fair' interpretation," and the Fifth Circuit in *Anderson* "merely recited section 510 without even addressing the facial inapplicability of section 510 to intra-office complaints." *Id.* at 428.

The sole federal Court of Appeals to address this issue in the context that we are presented with here – where an employee actually brings suit under Section 510 of ERISA itself – is the Second Circuit in *Nicolaou*. 402 F.3d at 327. Unlike the Fourth Circuit in *King*, the Second Circuit found that Section 510 of ERISA is "unambiguously broader in scope" than its counterpart in the FLSA. *Id.* at 328. Nevertheless, the court held that unsolicited internal complaints are not protected activities. First, the court explained that internal complaints could not fall under the term "proceeding" because "proceeding" "refers to the progression of a lawsuit or other business before a court,

> practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

42 U.S.C. § 2000e-3(a).

12

agency, or other official body[.]" *Id.* at 329. Second, the court held that, for an internal complaint to constitute an "inquiry," the employee would need to "demonstrate that she was contacted to meet with [management] in order to give information about the alleged [ERISA violation.]" *Id.* In other words, the employee's complaint would need to have been solicited.[6]

## C. The Plain Meaning of Section 510

We begin our analysis of ERISA's anti-retaliation provision "with an examination of ERISA's statutory language because 'absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.'" *Wolk v. Unum Life Ins. of Am.*, 186 F.3d 352, 355 (3d Cir. 1999) (quoting *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990)) (other quotations and citations omitted). Therefore, "the first step is to determine whether [Section 510] has a plain and unambiguous meaning." *Dobrek v. Phelan*, 419 F.3d 259, 263 (3d Cir. 2005). Words or provisions are ambiguous when "'they are reasonably susceptible of different interpretations.'" *Id.* at 264 (quoting *Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 473 n.27 (1985)). If there is an ambiguity, we look to "the surrounding words and provisions and also to the words in context." *Id.*

---

[6]Although its analysis was more nuanced with regard to the term "inquiry," the *Nicolaou* court did not view its holding to be in conflict with the Fourth Circuit's decision in *King*. *See Nicolaou*, 402 F.3d at 330.

To reiterate, Section 510 of ERISA provides as follows:

> "It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act."

29 U.S.C. § 1140. Since Edwards has undoubtably "given information" by objecting and/or complaining to management, at issue in this appeal is whether or not Edwards did so in any "inquiry or proceeding." The Secretary of Labor argues, in its brief as amicus curiae, that "[b]roadly but naturally construed, 'any inquiry or proceeding' encompasses plan participants' complaints to management or plan officials about wrongdoing, and the process by which that information is considered, however informal." (Secretary Br. at 16.) We disagree.

An "inquiry" is generally defined as "[a] request for information." Black's Law Dictionary 864 (9th ed. 2009). Here, Edwards does not allege that anyone approached her requesting information regarding a potential ERISA violation. Rather, she made her complaint voluntarily, of her own accord. Under these circumstances, the information that Edwards relayed to management was not part of an inquiry under the term's plain meaning.

On appeal, Edwards argues that her objections and/or complaints were themselves the inquiry. We disagree. Edwards's complaints were statements regarding potential

14

ERISA violations, not questions seeking information. Furthermore, because § 1140 protects employees that have "given information," not employees that have "received information," a plain reading of the provision indicates that "inquiry" includes only inquiries made of an employee, not inquiries made by an employee. The fact that Edwards's complaints may have eventually "culminat[ed]" in an inquiry, (*see* Secretary Br. at 17), underscores the fact that the complaints themselves, without more, do not constitute an inquiry.

Neither is Edwards's conduct encompassed by the term "proceeding." A "proceeding" is commonly defined as "[t]he regular and orderly progression of a lawsuit" or the "procedural means for seeking redress from a tribunal or agency." Black's Law Dictionary 1324 (9th ed. 2009). Here, there is no suggestion that any such formal action has occurred.[7]

In so holding, we follow the Fourth Circuit's opinion in *King*. As the *King* court noted, even beyond the plain meaning of "inquiry" and "proceeding," the phrase "testified or is about to testify" implies that the phrase "inquiry or proceeding" is limited to more formal actions. *See King*, 337 F.3d at 427. Not all anti-retaliation statutes are so limited. In drafting § 1140,

---

[7]As it is not necessary for the disposition of this case, we decline to elaborate on the level of formality required for protection under Section 510. At the very least, the provision would protect information given in legal and administrative proceedings.

15

Congress could have used broad language similar to that present in the anti-retaliation provision in Section 704(a) of Title VII, which extends broad protection to employees that have "opposed any practice made an unlawful employment practice by [Title VII.]" 42 U.S.C. § 2000e-3(a). Congress declined to do so, and, like the court in *King*, we find this choice to be persuasive. *See King*, 337 F.3d at 427. Finally, we agree with the Fourth Circuit that the Ninth and Fifth Circuit opinions in *Hashimoto* and *Anderson*, respectively, are not compelling. Neither court examined the statutory language of Section 510 in detail: the Fifth Circuit gave the issue cursory treatment, *see Anderson*, 11 F.3d at 1314, and the Ninth Circuit appeared to focus its analysis on the adoption of a "fair" interpretation, *see Hashimoto*, 999 F.2d at 411. *See also King*, 337 F.3d at 428.

Edwards and the Secretary argue that we should give Section 510 a broader reading because ERISA is a remedial statute. This connection is lacking. Although ERISA "should be liberally construed in favor of protecting the participants in employee benefit plans," *see IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc.*, 788 F.2d 118, 127 (3d Cir. 1986), this does not entitle us to ignore clear statutory language. *See Wolk*, 186 F.3d at 355 ("[A]bsent a clearly expressed legislative intention to the contrary, [ERISA's statutory] language must ordinarily be regarded as conclusive." (quotations and citations omitted)). If Section 510 were ambiguous, we would construe the provision in favor of plan participants. However, as discussed above, we find the provision's plain meaning to be clear.

16

Likewise, Edwards and the Secretary argue that Section 510 deserves a broader reading because the failure to protect unsolicited internal complaints would undermine the provision's purpose, as "it would permit an employer to terminate an employee upon the employee first notifying the employer of the ERISA violation[.]" (Edwards Br. at 14.) This contention must also fail. Presented as we are with clear statuary language, we do not need to speculate as to Congress's intent. It suffices to note that, had Congress been concerned with such a scenario, Congress could have used broad language mirroring the anti-retaliation provision of Title VII. Congress chose not to do so.

### D. Analogous Third Circuit Precedent

Contrary to the assertions of Edwards and the Secretary, the conclusion that Section 510 of ERISA does not protect unsolicited internal complaints does not conflict with our prior case law regarding anti-retaliation statutes. Edwards and the Secretary cite two opinions to that effect: *Brock v. Richardson*, 812 F.2d 121 (3d Cir. 1987), which addresses the scope of Section 15(a)(3) of the FLSA, and *Passaic Valley Sewerage Commissioners v. United States Department of Labor*, 992 F.2d 474 (3d Cir. 1993), which addresses the scope of Section 507(a) of the Clean Water Act (CWA). Neither case is controlling here.

*Brock* is distinguishable because it concerned a different issue in the context of a different statute. We examined in *Brock* whether "an employer's [mistaken] belief that an employee has engaged in protected activity is sufficient to trigger application" of the anti-retaliation provision of the

FLSA, and held in the affirmative. 812 F.2d at 123. We did not address whether Section 15(a)(3) of the FLSA protects internal complaints. There is a circuit split on this issue, which we have not yet joined.[8]

Even if we had held in *Brock* that internal complaints are protected under the FLSA, that conclusion would not be dispositive here. Section 15(a)(3) of the FLSA and Section 510 of ERISA are not identical. Section 15(a)(3) of the FLSA

---

[8]The First, Fifth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits have held that internal complaints are protected under the FLSA. *See Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 626 (5th Cir. 2008); *Lambert v. Ackerley*, 180 F.3d 997, 1004 (9th Cir. 1999) (en banc); *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 41 (1st Cir. 1999); *E.E.O.C. v. Romeo Cmty. Sch.*, 976 F.2d 985, 989 (6th Cir. 1992); *E.E.O.C. v. White & Son Enters.*, 881 F.2d 1006, 1011 (11th Cir. 1989); *Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 387 (10th Cir. 1984); *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179, 181 (8th Cir. 1975). The Second and Fourth Circuits have held to the contrary. *See Ball*, 228 F.3d at 364; *Lambert v. Genesee Hosp.*, 10 F.3d 46, 55 (2d Cir. 1993). Finally, the Seventh Circuit has taken a middle approach. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 570 F.3d 834, 838, 840 (7th Cir. 2009) (holding that written, but not oral, internal complaints are protected based on the inclusion of the verb "filed"), *cert. granted*, - - - S. Ct. - - - -, 2010 WL 128339 (U.S. Mar. 22, 2010) (No. 09-834). We have cited the majority approach with approval in dicta. *See Brock*, 812 F.2d at 124.

extends broadly to persons that have "filed any complaint," without explicitly stating the level of formality required. 29 U.S.C. § 215(a)(3). Section 510 of ERISA, in contrast, extends only to persons that have "given information or [] testified" in an "inquiry or proceeding." 29 U.S.C. § 1140. The word "complaint" is not even used. Therefore, the conclusion that internal complaints are protected under the FLSA does not require a parallel conclusion under ERISA's distinct statutory language.

*Passaic Valley* provides a closer comparison. In *Passaic Valley*, we examined, as here, whether intracorporate complaints are protected under Section 507(a) of the CWA. 992 F.2d at 477. Section 507(a) provides as follows:

> "No person shall fire, or in any other way discriminate against, or cause to be fired or discriminated against, any employee or any authorized representative of employees by reason of the fact that such employee or representative has filed, instituted, or caused to be filed or instituted any proceeding under this chapter, or has testified or is about to testify in any proceeding resulting from the administration or enforcement of the provisions of this chapter."

33 U.S.C. § 1367(a). We held in *Passaic Valley* that the term "proceeding" within Section 507(a) is ambiguous: "The term may reasonably be invoked to encompass a range of complaint activity of varying degrees of formal legal status." 992 F.2d at 478. Accordingly, we gave *Chevron* deference to the Secretary

19

of Labor's Final Decision and Order and held that intracorporate allegations are protected under the CWA. *Id.* at 478-80.

Although it might appear so at first glance, *Passaic Valley* is not dispositive here for a couple of reasons, not the least of which is that *Passaic Valley* addresses Section 507(a) of the CWA, not Section 510 of ERISA. First, to preclude an expansive use of our holding, we did not state in *Passaic Valley* that the term "proceeding" is necessarily ambiguous in all anti-retaliation provisions. Rather, we expressly stated that the term "proceeding" is ambiguous "*within* § 507(a) of the Clean Water Act[.]" *Id.* at 478 (emphasis added). In so holding, we avoided the rote application of *Passaic Valley* in other contexts, such as that of Section 510 of ERISA.

Second, we gave *Chevron* deference in *Passaic Valley* to the Secretary of Labor's "reasonably permissive construction" that "all good faith intracorporate allegations are fully protected from retaliation under § 507(a)[.]" *Id.* at 480. Contrary to the Secretary's suggestion here, we do not likewise owe *Chevron* deference to the Secretary's allegedly consistent reading of Section 510. Although the Department of Labor is the federal agency in charge of overseeing ERISA, *see Mack Boring & Parts v. Meeker Sharkey Moffitt, Actuarial Consultants*, 930 F.2d 267, 276 (3d Cir. 1991), we do not apply *Chevron* deference to "agency litigat[ion] positions that are wholly unsupported by regulations, ruling, or administrative practice," *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988). In *Passaic Valley*, we relied on the Secretary's Final Decision and Order. 992 F.2d at 477. Here, in contrast, the Secretary has

20

not pointed to any regulations, rulings, or other material in support of its position.

Therefore, rather than base our holding on our prior case law regarding Section 507(a) of the CWA, we will ground our decision in the plain meaning of Section 510 of ERISA itself.

## IV.

In summary, we agree with the Fourth Circuit's decision in *King* that unsolicited internal complaints are not protected under Section 510 of ERISA, 29 U.S.C. § 1140, based on a plain reading of that provision's terms. We will accordingly affirm the order of the District Court.[9]

---

[9]In light of our disposition, we decline to address A.H. Cornell's additional arguments that Edwards cannot maintain a claim against Cornell and Closterman because they "merely served as the company's agents," (A.H. Cornell Br. at 7), and that, regardless of the outcome of this appeal, the allegations in Edwards's complaint fail to satisfy the pleading requirements articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

21

COWEN, Circuit Judge, dissenting

Unlike the Court, I conclude that ERISA's anti-retaliation provision does indeed protect "an employee's unsolicited internal complaints to management." Accordingly, I must respectfully dissent.

The majority is obviously correct that the statutory interpretation process must begin with the actual language of Section 510. Specifically, the statutory language at issue is generally regarded as conclusive, at least in the absence of a clearly expressed legislative intention to the contrary. See, e.g., Wolk v. UNUM Life Ins. of Am., 186 F.3d 352, 355 (3d Cir. 1999). I further agree with the majority that "the first step is to determine whether [Section 510] has a plain and unambiguous meaning." Dobrek v. Phelan, 419 F.3d 259, 263 (3d Cir. 2005) (citing Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002)). I, however, believe that the statutory language used in this anti-retaliation provision is *ambiguous*. In fact, as explained below, I find it highly doubtful that Congress could have ever intended for its anti-retaliation provision to apply in the manner suggested by the majority, in particular because the majority's interpretation leaves totally unprotected a certain category of conduct (as well as the employees who may engage in such conduct) that this remedial statutory provision was enacted to protect in the first place. See, e.g., Disabled in Action of Pa. v. Southeastern Pa. Transp. Auth., 539 F.3d 199, 210 (3d Cir. 2008) (stating that we "avoid constructions that produce 'odd' or 'absurd results' or that are 'inconsistent with common sense'" (quoting Public Citizen v. U.S. Dep't of Justice, 491 U.S. 440, 454 (1989); 2A N. Singer, Sutherland Statutes and Statutory Construction § 45:12, at 92 (6th ed. 2000))).

Initially, the majority does acknowledge at least some of the broad considerations underlying ERISA and its anti-retaliation provision, but it generally fails to give these various considerations the weight they deserve. Accordingly, the majority recognizes that ERISA, as a remedial statute, "should be liberally construed in favor of protecting the participants in employee benefit plans." IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc., 788 F.2d 118, 127 (3d Cir. 1986) (citations

omitted). It likewise states that: (1) ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries, see, e.g., Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90 (1983); (2) the statute imposes different standards and requirements with respect to the operation of the plans themselves; id. at 91; (3) Congress similarly included various safeguards in order to deter abuse and "'to completely secure the rights and expectations brought into being by this landmark reform legislation,'" Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 137 (1990) (quoting S. Rep. No. 93-127, at 36 (1973)); and (4) Section 510, designed to eliminate interference with the rights protected by ERISA, represents one of these critical statutory safeguards, id. I further note that "Congress viewed this section as a crucial part of ERISA because, without it, employers would be able to circumvent the provision of promised benefits." Id. at 143 (citing S. Rep. No. 93-127, at 35-36; H.R. Rep. No. 93-533, at 17 (1973)). In other words, this anti-retaliation provision plays a very important and even essential role in the proper implementation of the whole ERISA scheme because it actually "'helps to make [ERISA's] promises credible.'" Inter-Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry. Co., 520 U.S. 510, 515 (1997) (quoting Heath v. Varity Corp., 71 F.3d 256, 258 (7th Cir. 1995)).

Far from liberally construing this remedial legislation in favor of the very persons it was designed to protect, the majority adopts an ultimately unsustainable interpretation. At least at times, it appears to follow the very narrow approach adopted by the Fourth Circuit in King v. Marriott International, Inc., 337 F.3d 421 (4th Cir. 2003), as opposed to the more moderate position taken by the Second Circuit in Nicolaou v. Horizon Media, Inc., 402 F.3d 325 (2d Cir. 2005) (per curiam). However, even the Second Circuit disagreed with the Fourth Circuit's belief "that Congress's use of the phrase 'testify or about to testify' dictates" the conclusion "that Section 510 protects those who engage in 'something more formal than written or oral complaints made to a supervisor.'" Id. at 330 n.3 (quoting King, 337 F.3d at 427). The Nicolaou court quite properly read this "reference to testimony" language as "wholly irrelevant to our understanding of the language 'given

2

information . . . in any inquiry or proceeding.'" Id.

More broadly, I acknowledge that the Fifth Circuit did not examine this issue in any real detail in its ruling in Anderson v. Electronic Data Systems Corp., 11 F.3d 1311 (5th Cir. 1994). On the other hand, the majority itself quotes the Ninth Circuit's reasonable and ultimately persuasive explanation for why it concluded in Hashimoto v. Bank of Hawaii, 999 F.2d 408 (9th Cir. 1993), that Section 510 does, in fact, encompass internal workplace complaints. It bears repeating here:

> . . . . The normal first step in giving information or testifying in any way that might tempt an employer to discharge one would be to present the problem first to the responsible managers of the ERISA plan. If one is then discharged for raising the problem, the process of giving information or testifying is interrupted at its start: the anticipatory discharge discourages the whistle blower before the whistle is blown.

Id. at 411. Like the Ninth Circuit, I find it difficult to believe that Congress could have ever intended to exclude from the protection of its remedial anti-retaliation provision employees who are terminated because they bring an ERISA-related problem to the attention of their superiors.

Likewise, the majority's narrow interpretation of the specific term "inquiry" appears questionable at best. In addition to leaving the crucial "first step" unprotected, the Second Circuit's whole "inquiry" standard could be difficult to apply and even unworkable in certain circumstances. Certain conduct may clearly constitute an "inquiry," such as the plaintiff's alleged activities in Nicolaou itself, which included contacting her employer's outside attorney regarding an alleged underfunding problem and then, after the lawyer conducted an inquiry of his own and evidently at the request of the lawyer, meeting with both him and the president of the company. Nicolaou, 402 F.3d at 326-27, 329-30. On the other hand, an internal workplace complaint would quite naturally constitute a

3

preliminary step before a formal or informal inquiry is launched (and such a complaint may even have been necessary to trigger the investigation in the first place).  However, where does one draw the line between such an initial step, which the Second Circuit and majority have held is not protected by the statutory provision, and otherwise "protected" statements purportedly made as part of some sort of inquiry?  For instance, suppose an employee like Edwards complains to her superior, the superior asks some follow-up questions, and the employee responds to these questions.  Are the informal responses to some impromptu questions to be regarded as protected because they evidently were made as part of an "inquiry?"  In turn, why should such responses be protected while, at the same time, an employer is essentially permitted (and perhaps, in essence, encouraged) to fire an employee immediately after she makes an informal complaint instead of conducting an investigation of some sort?

In addition, the majority goes on to hold that Section 510 only protects employees who give information as part of the inquiry, as opposed to those individuals who actually conduct the inquiry and thereby "received information."  Admittedly, the Second Circuit in Nicolaou did deal with a plaintiff who had, inter alia, been invited to attend a meeting with both the president and outside counsel and stated her opinion that a 401(k) plan was underfunded.  Id.  Nevertheless, the majority's approach appears to be highly questionable at best insofar as it leaves an entire class of employees, who, given their responsibility to conduct potentially sensitive and damaging investigations into possible ERISA violations and related matters, would need protection from retaliation even more than employees who merely answers some questions.

Even though these various considerations clearly weigh in favor of the more expansive interpretation offered by the Fifth and Ninth Circuits, Edwards, and the Secretary, I might still be inclined to agree with the majority's ultimate result here based on the language actually used in the statutory provision.  Nevertheless, analogous Third Circuit decisions clearly indicate that the language in Section 510 is ambiguous and that this Court should, in turn, interpret such language as encompassing internal

4

workplace complaints.

As a general matter, I recognize that the case law addressed different statutes using different statutory language, and these decisions accordingly do not represent technically binding precedents at this juncture. The fact that Congress has chosen to use different terms in different anti-retaliation provisions should also not be overlooked. Accordingly, I do not suggest that Section 510 should be interpreted as broadly as its Title VII counterpart, which, among other things, expressly covers employees who have "opposed any practice made an unlawful employment practice by [Title VII.]" 42 U.S.C. § 2000e-3(a). Nevertheless, this Court obviously should strive to treat relatively similar statutory provisions, contained in similar remedial federal statutes, in a clear and consistent fashion. In any case, as highlighted below, at least some of the terms used in Section 510 are actually more expansive than the equivalent terms contained in other anti-retaliation provisions.

I start with a case that actually held that the term "proceeding" is ambiguous and gave <u>Chevron</u> deference to the Secretary's formal determination that intracorporate complaints are, in fact, protected activities: <u>Passaic Valley Sewerage Commissioners v. United States Department of Labor</u>, 992 F.2d 474 (3d Cir. 1993).

The <u>Passaic Valley</u> Court held that the statutory term "proceeding," which is contained in both the CWA provision and its ERISA counterpart, is "ambiguous" because it "may reasonably be invoked to encompass a range of complaint activity of varying degrees of formal legal status." <u>Id.</u> at 478. It then added "that the [CWA's] purpose and legislative history allow, and even necessitate, extension of the term 'proceeding' to intracorporate complaints." <u>Id.</u> In other words, the protection provided by the section "would be largely hollow if it were restricted to the point of filing a formal complaint with the appropriate external law enforcement agency." <u>Id.</u> "Employees should not be discouraged from the normal route of pursuing internal remedies before going public with their good faith allegations." <u>Id.</u> Instead, they should be encouraged to notify

5

management of their observations before any formal investigations and litigation are initiated, thereby providing management with the opportunity to correct, justify, or clarify policies or otherwise facilitate prompt remediation and compliance. Id. at 478-79. Furthermore, an employee's non-frivolous complaint should not have to be guaranteed to withstand the scrutiny of review before meriting legal protection "for the obvious reason that such a standard would chill employee initiatives in bringing to light perceived discrepancies in the workings of their agencies." Id. at 479. In addition, the Court in Passaic Valley observed that "the whistle-blower provision of the Clean Water Act mirrors that of several other federal environmental, safety and energy statutes," which have also been broadly construed in the case law. Id. (footnote omitted) Therefore, "[a]lthough the present case is the first to present us with this issue in the context of the Clean Water Act, the weight of other circuits' precedent reviewing analogous statutes concurs with the Secretary's own broad inclusion of intracorporate complaints within the protective scope of the statute." Id. at 480.

This reasoning clearly supports interpreting Section 510, which is generally analogous to the anti-retaliation section of the CWA, as encompassing internal workplace complaints. In turn, I have no choice but to reject the majority's efforts to minimize and distinguish this prior ruling.[1]

In particular, its assertion that the Passaic Valley Court attempted to avoid any "rote application" of its holding overlooks the crucial fact that the Court itself turned to other anti-retaliation provisions in its analysis of the CWA section. For instance, it noted that the anti-retaliation provision in the FLSA is among the statutory provisions that have been expansively construed "to lend broad protective coverage to internal complainants." Id. at 479. In any case, I do not believe

---

[1] I do, however, agree with the majority's finding that we do not owe Chevron deference to the Secretary's reading of Section 510.

6

that following the example set in Passaic Valley by carefully taking into account a prior Third Circuit opinion represents any kind of "rote" exercise.

Furthermore, the CWA provision expressly prohibits discrimination against any employee who has "filed, instituted, or caused to be filed or instituted any proceeding under this chapter, or has testified or is about to testify in any proceeding resulting from the administration or enforcement of the provisions of this chapter." 33 U.S.C. § 1367(a). At least on the surface, this "filed" and "instituted" language evidently contemplates something more formal than, inter alia, an unsolicited internal complaint to one's superiors. Therefore, I find that Section 510, with its "given information" and "inquiry" language, appears to be even broader than its environmental counterpart, addressed (and broadly construed) in Passaic Valley.

In addition, the Court's ruling in Brock v. Richardson, 812 F.2d 121 (3d Cir. 1987), provides yet further support for concluding that Section 510 protects unsolicited internal complaints.

Initially, the majority is correct that Brock addressed the question of whether the anti-retaliation provision of the FLSA is triggered by an employer's ultimately mistaken belief that an employee has engaged in otherwise protected activity under the statute. Id. at 122-25. In answering this question in the affirmative, the Court in Brock quite appropriately turned to the same kind of broad policy considerations discussed in Passaic Valley. Id. at 123-25. For instance, it noted that Congress, instead of seeking to secure compliance through detailed and ongoing governmental supervision of employer payrolls, put in place a system relying on information and complaints from the employees itself. Id. at 124. "Thus, the [Supreme] Court has made clear that the key to interpreting the anti-retaliation provision is the need to prevent employees' 'fear of economic retaliation' for voicing grievances about substandard conditions.'" Id. (quoting Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 292 (1960)). Significantly, the Brock Court

7

even indicated a willingness to go beyond the bare language of the statutory provision itself, stating that "courts interpreting the anti-retaliation provision have looked to its animating spirit in applying it to activities that might not have been explicitly covered by the language." Id. As an example, it turned to the Tenth Circuit's ruling in Love v. RE/MAX of America, Inc., 738 F.2d 383 (10th Cir. 1984), which applied the anti-retaliation provision "to protect employees who have protested Fair Labor Standards Act violations to their employers."[2] Brock, 812 F.2d at 387 (citing Love, 738 F.2d at 387).

The majority points out that the anti-retaliation provision in the FLSA differs from the ERISA counterpart. I agree, but the differences here actually weigh against the interpretation offered by the majority. Just like the anti-retaliation provision in the CWA, the FLSA provides that it is unlawful to discharge or discriminate against an employee because he or she "has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3) As previously noted with respect to Passaic Valley, this language arguably contemplates some sort of formal filing. See, e.g., Ball v. Memphis Bar-B-Q Co., 228 F.3d 360, 364 (4th Cir. 2000) (finding that FLSA does not protect intra-company complaints because, among other things, the term "proceeding" was "modified by attributes of administrative or court proceedings," the term "instituted" indicates "a formality that does not attend an employee's oral complaint to his supervisor," and "testimony" consists of "statements given under oath or affirmation" (citations omitted)). On the other hand, Section 510 refers to an "inquiry," as opposed to merely a "proceeding," as well as "giv[ing] information," in contrast to mere "testimony." As even the majority recognizes, the Second Circuit accordingly observed that "the plain language of ERISA Section 510" is

---

[2] It is significant that the Passaic Valley Court also relied on Love in its analysis of the CWA's anti-retaliation provision. Passaic Valley, 992 F.2d at 479.

8

"unambiguously broader in scope than Section 15(a)(3) of FLSA." Nicolaou, 402 F.3d at 328.

In the end, I am unable to agree with the majority's ruling here in light of the statutory language at issue, the expansive purposes and principles underpinning ERISA and its anti-retaliation provision, and (especially) prior decisions[3] by this very Court broadly interpreting similar anti-retaliation statutes in other federal statutes. I accordingly would reverse the ruling of the District Court and remand for further proceedings.

---

[3] In addition to the rulings in Passiac Valley and Brock, I further note that this Court adopted a somewhat similar approach to the False Claims Act's anti-retaliation provision in Hutchins v. Wilentz, Goldman & Spitzer, 253 F.3d 176 (3d Cir. 2001). The Hutchins Court noted, inter alia, that protected activities "can include internal reporting and investigation of an employer's false or fraudulent claims." Id. at 187 (citing United States ex rel. Yesudian v. Howard Univ., 153 F.3d 731, 742 (D.C. Cir. 1998)).